<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
————————————————————x
:
*In re:*                                                    :
:
PBS FOODS LLC d/b/a Payard Patisserie    :    Chapter 7
& Bistro,                                                  :    Case No. 09-15629-jlg
:
*Debtor.*                        :
:
————————————————————x
:
YANN GERON, as Chapter 7 Trustee of       :
the Estate of PBS Foods LLC d/b/a Payard   :
Patisserie & Bistro,                                  :
:
*Plaintiff,*                      :
:
v.                                                             :    Adversary No. 11-02717-jlg
:
HOLDING CAPITAL GROUP INC. and        :
FP HOLDINGS LLC,                                :
:
*Defendants.*                      :
:
————————————————————x

<u>**MEMORANDUM DECISION AND ORDER DENYING THE MOTION OF**
**CREDITOR 1032-1034 LEX. AVE. LTD. FOR RECONSIDERATION OF**
**THE ORDER APPROVING A SETTLEMENT AGREEMENT BETWEEN THE**
**PLAINTIFF, HOLDING CAPITAL GROUP INC., AND FP HOLDINGS LLC**</u>

<u>**A P P E A R A N C E S :**</u>

FOX ROTHSCHILD LLP
*Attorneys for Plaintiff Yann Geron*
100 Park Avenue
Suite 1500
New York, New York 10017
<u>By:</u>    Yann Geron, Esq.

BLEAKLEY PLATT & SCHMIDT LLP
*Attorneys for Defendants Holding Capital Group Inc. and FP Holdings LLC*
One North Lexington Avenue
White Plains, New York 10601
<u>By:</u>    Richard F. Markert, Esq.
        John I. O'Neill, Esq.

KERA & GRAUBARD
*Attorneys for Creditor 1032-1034 Lex. Ave. Ltd.*
240 Madison Avenue
Seventh Floor
New York, New York 10016
<u>By:</u>    M. David Graubard, Esq.

**The Honorable James L. Garrity, Jr.**
**United States Bankruptcy Judge**

<u>**Introduction**</u>

Before the Court is the motion (the "Motion") of 1032-1034 Lex. Ave. Ltd., the Debtor's

former landlord and a creditor of the Debtor's estate (the "Landlord"), for reconsideration of an

order entered by the Court (Grossman, J.)[1] approving a settlement agreement between the

Plaintiff, Yann Geron (the "Trustee" or the "Plaintiff"), on the one hand, and the Defendants,

Holding Capital Group Inc. ("HCG") and FP Holdings LLC ("Holdings," together with HCG,

the "Defendants"), on the other hand.

As fully explained below, the Landlord contends that the Motion should be granted

because, in approving the settlement, the Court committed manifest errors of fact and law. The

Trustee and the Defendants oppose the Motion arguing, among other things, that the Court did

not err in approving the settlement and that the Landlord is merely rehashing arguments properly

rejected by the Court when it approved the settlement. The Landlord does not point to evidence

or other matters overlooked by the Court that would have altered its decision to approve the

settlement. Nor has it demonstrated a need to correct clear errors of fact or law by the Court.

Accordingly, as explained below, the Motion is **DENIED.**

---

[1]    The above-captioned Bankruptcy Case and Adversary Proceeding were previously assigned to Judge James M.
Peck. After Judge Peck's retirement on January 31, 2014, the matters were temporarily reassigned to Judge
Robert E. Grossman, sitting by designation in the Southern District of New York pursuant to an order signed on
January 6, 2014 by Chief Circuit Judge Robert A. Katzmann of the Second Circuit Court of Appeals. The matters
were reassigned to the undersigned on February 18, 2015.

**Background**

On September 17, 2009 (the "Petition Date"), PBS Foods LLC d/b/a Payard Patisserie &

Bistro (the "Debtor") filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code,

initiating the above-captioned bankruptcy case (the "Bankruptcy Case"). The Plaintiff was

appointed as the interim chapter 7 trustee of the Debtor's estate and thereafter qualified, and is

currently serving, as the permanent trustee.

Prior to the Petition Date, the Debtor was allegedly indebted to Holdings pursuant to an

Amended and Restated Term Note dated August 1, 2000 (the "Note") in the amount of $500,001.

Holdings contends that the Note is secured by certain of the Debtor's property pursuant to a

separate loan and security agreement between the Debtor and Holdings. On July 9, 2009 – within

the ninety-day period prior to the Petition Date – Holdings attempted to perfect its security

interest in the Debtor's property by filing a UCC-1 Financing Statement with the New York

Secretary of State (the "UCC Transfer"). In addition – and also during the ninety days prior to

the bankruptcy filing – the Debtor made payments totaling $237,500 to HCG (the "HCG

Transfers"), of which $200,000 was subsequently transferred to Holdings (the "Holdings

Transfer").

On September 16, 2011, the Trustee filed a complaint against HCG and Holdings,

commencing this adversary proceeding (the "Adversary Proceeding"). By the action, the Trustee

sought to avoid and recover the UCC Transfer (Count One), the Holdings Transfer (Count Two),

and the HCG Transfers (Counts Three, Four, and Five) pursuant to §§ 547, 548, and 550 of the

Bankruptcy Code. He also sought to disallow any claims filed by HCG and Holdings pursuant to

§ 502(d) of the Bankruptcy Code (Counts Six and Seven) and to recover from Holdings the value

of certain license royalties that should rightfully have been paid to the Debtor (Count Eight). As

3

to Count Eight, the Trustee alleged that the Debtor had licensed its trademarks to a subsidiary of

Holdings for no consideration, which then sublicensed the marks to others for a substantial

profit.

By motion dated January 8, 2014 (the "9019 Motion"), the Trustee sought approval of an

agreement with the Defendants to settle the Adversary Proceeding (the "Settlement") pursuant to

Rule 9019 of the Federal Rules of Bankruptcy Procedure ("Rule 9019"). (*See Trustee's*

*Application, Pursuant to Bankruptcy Rule 9019, for an Order Approving Settlement Agreement*

*Resolving Trustee's Claims Against Defendants Holding Capital Group Inc. and FP Holdings*

*LLC* [ECF 45].[2]) In substance, the Settlement calls for (i) the Defendants to make a one-time

payment of $105,000 to the Trustee, (ii) Holdings to waive its unsecured claim of $726,131

against the estate (the "Holdings Claim"), and (iii) the Defendants to each waive their claims

under § 502(h) of the Bankruptcy Code, which together will be in full satisfaction of any and all

of the estate's claims against the Defendants.

The 9019 Motion was first before the Court at a hearing on March 11, 2014. At that

hearing, Trustee's counsel explained the process that the Trustee had employed in reaching the

Settlement and asked the Court to approve it, arguing that approval of the Settlement was in the

best interests of creditors and that the Settlement did not fall below the lowest point in the range

of reasonableness.[3]

---

[2]  References to "ECF" refer to the electronic docket maintained in the Bankruptcy Case. References to "AP ECF"
refer to the docket maintained in the Adversary Proceeding.

[3]  Trustee's counsel stated:

> The Trustee extensively negotiated with the Defendants, exchanged documents, analyzed the
> potential defenses and considered the cost of litigating the claims . . . . The Trustee is confident
> that the resolution is in the best interest of the estate and its creditors and does not believe that a
> higher net recovery can be achieved if the claims were fully litigated. The settlement should be
> approved based on the Trustee's exercise of his business judgment and we're confident that the
> business judgment was properly exercised in [this] situation.

Although the Landlord had not filed any response or opposition to the 9019 Motion, its

counsel appeared at the hearing. The Landlord's claim against the estate – more than half of

which is comprised of lease rejection damages arising under § 502(b)(6) of the Bankruptcy

Code – totals nearly $1.3 million and appears to be the largest single claim in the Bankruptcy

Case. At the hearing, Landlord's counsel stated that his "gut reaction" to the Settlement was that

it was "too low." (Mar. 11, 2014 Hr'g Tr. 4:17-18.) He explained that the Landlord had not filed

an objection to the 9019 Motion because the Trustee had only recently responded to the

Landlord's discovery requests and had refused to provide certain information in writing that the

Trustee deemed to be sensitive. The Landlord requested an adjournment of the hearing and

additional time to respond to the 9019 Motion in order to allow it to "digest all the discovery" it

had received.[4] (*Id.* at 4:18-19.) Trustee's counsel did not oppose an adjournment, but insisted that

the Trustee had responded to the Landlord's discovery request and that the Trustee's responses

had been in the Landlord's possession for several weeks.[5]

---

Further, to approve a settlement under 9019, the Court must find only that the settlement does not
fall below the lowest level of reasonableness and we're confident that this settlement is in the best
interests of creditors. Although the matter was initially scheduled for a hearing in January, no
objections have been filed and we submit that the application should be granted.

(Mar. 11, 2014 Hr'g Tr. 3:13-4:4.)

[4] Landlord's counsel argued:

[B]ecause [the Trustee] didn't give us discovery, we can't even formulate a position . . . . I think
my client who's 98 percent of the unsecured debt should have the opportunity to digest the
information, especially when someone said to us they won't give [certain of the discovery] to us in
writing but will give it to us orally because it's sensitive information, we should have a chance to
digest that to see what position we're going to take.

(Mar. 11, 2014 Hr'g Tr. 5:6-13.).

[5] Trustee's counsel stated:

We did respond to all of the discovery. [The Landlord] sent us three document requests and a
couple of interrogatories. With respect to one interrogatory, we responded that we thought the
information was highly sensitive and shouldn't be put in the public record so we called
[Landlord's counsel] and told him the information. He has had it since February 27th, so about
two or three weeks ago. And for the record, [the Landlord] has not requested an adjournment of

In response to the Landlord's misgivings about the Settlement, the Court suggested that given the Landlord's substantial economic interest in the Bankruptcy Case, one way for it to address its concerns regarding the amount of the Settlement would be to offer to purchase the estate's claims from the Trustee.[6] Landlord's counsel indicated that his client "might be willing to do that," but stated that he and his client needed more time to discuss the matter. (*Id.* at 5:23-6:1.) For her part, Trustee's counsel stated that the Trustee would welcome such an offer and would be "happy to consider it." (*Id.* at 7:11.)

Ultimately, the Court denied Landlord's request for an adjournment, went forward with the hearing, and approved the Settlement.[7] Even as it did so, the Court preserved the Landlord's option to offer to purchase the Trustee's claims by directing the Trustee to hold the proposed order approving the Settlement for one week so that the Landlord would have time to make an

---

the objection deadline so . . . we weren't sitting here waiting for an objection. We thought we were ready to proceed.

(Mar. 11, 2014 Hr'g Tr. 6:25-7:9.)

[6]  In part, the discussion among the Court and Landlord's counsel was as follows:

THE COURT: [The Landlord] represents 98 percent –

MR. GRAUBARD: – of the unsecured debt, yes.

THE COURT: So [the Settlement] is essentially [the Landlord's] money?

MR. GRAUBARD: Yes.

THE COURT: So why don't you pay the Trustee $105,000 and take the [case] yourself?

(Mar. 11, 2014 Hr'g Tr. 5:14-19.)

[7]  Speaking to Landlord's counsel, the Court stated:

Do you understand that the standard for approving a settlement, a 9019 settlement for the Trustee [is that] as long as they make the lowest reasonable standard, the Court should approve it? I don't get into their business judgment. They're settling the matter. They think it's fair and reasonable. If ultimately you think the Trustee breached some obligation or fiduciary or something, do it, you know. But there's no reason not to approve the settlement.

(Mar. 11, 2014 Hr'g Tr. 4:23-5:5.)

offer.[8] Landlord's counsel was not satisfied with the accommodation, arguing that the Landlord

was "put in a poor position because the [T]rustee did not respond to discovery." (*Id.* at 7:18-20.)

The Court found no merit to the Landlord's complaints, particularly in light of its failure to file

written opposition to the 9019 Motion.[9]

Following the hearing, the Trustee neither accepted a purchase offer from the Landlord

nor submitted a proposed order to the Court. Rather, the Trustee treated the matter as adjourned

*sine die* while he explored the possibility of entering into a transaction with the Landlord. Over

the next seven months, the Trustee, the Landlord, and their respective counsel discussed the

Landlord's potential acquisition of the Trustee's claims in the Adversary Proceeding. One

challenge facing the Landlord in formulating a purchase offer was that the offer had to account

for the allowance of the Holdings Claim, which would not be waived under a deal with the

Landlord and would therefore reduce the *pro rata* distribution to the other unsecured creditors

below what they would receive under the Settlement.

Ultimately, the Landlord proposed to pay the Trustee $130,000 to purchase all of the

estate's claims against the Defendants, including those asserted in the Adversary Proceeding (the

---

[8]  The Court stated:

> Here's what we're going to do. I'm going to approve the settlement. [The Trustee will] hold the
> order for a week . . . . [I]f [the Landlord] wants to make a better offer, then the Trustee will come
> back. If not, I'll approve this one.

(Mar. 11, 2014 Hr'g Tr. 7:13-17.)

[9]  Speaking to Landlord's counsel, the Court stated:

> You had the opportunity to file a written objection. You didn't. There was no asking for an
> adjournment of this 'til last night which I don't do. I have a 9019 where the Trustee is an
> experienced trustee says within his business judgment it's acceptable. Your client represents
> primarily all this money. You want a different deal, cut a deal with him and take the [case], do
> what you want. Otherwise that's the deal. So the Court will grant the motion. I'll hold [the order
> approving the Settlement] if you want or not.

(Mar. 11, 2014 Hr'g Tr. 7:25-8:9.)

"Landlord's Offer").[10] The Landlord addressed the allowance of the Holdings Claim by filing an objection seeking to expunge that claim (the "Landlord's Claim Objection"). (*See Motion Objecting to Claim No. 6 by FP Holdings LLC* [ECF 50].) Since the success of the Landlord's Claim Objection was not assured, the Landlord proposed to guarantee that the *pro rata* distribution to unsecured creditors (other than Holdings) would not fall below the amount they would receive under the Settlement by offering to provide additional funds to the Trustee if the Holdings Claim was allowed.

The Trustee did not accept the Landlord's Offer. Instead, on October 21, 2014, the Trustee filed a notice that the hearing to consider approval of the Settlement would recommence on November 4, 2014. (*See Notice of Continued Hearing on Trustee's Application for an Order, Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, Approving a Settlement Agreement between the Chapter 7 Trustee and (1) Holding Capital Group Inc. and (2) FP Holdings LLC* [ECF 53] [AP ECF 28].)

Prior to the adjourned hearing, the Landlord filed written opposition to the 9019 Motion (the "9019 Opposition"). (*See Attorney's Certification in Support of Landlord's Offer to*

---

[10] By letter dated March 25, 2014, the Landlord made its initial offer to the Trustee to purchase the claims for the sum of $105,000:

> [The Landlord] hereby offers the sum of $105,000 to the Trustee for the Trustee's right, title, and interest in and to his position as Plaintiff in [the Adversary Proceeding] . . . . This offer is based on the transfer by the Trustee to the Landlord of any and all claims and rights of any kind or nature whatsoever that the Trustee and the estate have against [the Defendants], including, without limitation, [the Adversary Proceeding] . . . .

> This offer is made so that the Landlord will "step into the shoes" of the Trustee as plaintiff in the [Adversary Proceeding]. Any order approving this offer and the transfer of the Trustee's right, title, and interest, shall include a provision conferring on the Landlord full standing as the fully empowered representative of the Trustee and the estate for this limited purpose, with all rights necessary to proceed in the [Adversary Proceeding] against [the Defendants] in the name and stead of the Trustee . . . .

(Mar. 25, 2014 Letter at 1-2 [AP ECF 30-3].) By subsequent email on October 1, 2014, the cash component of the Landlord's Offer was increased to $130,000.

*Purchase Trustee's Claims Against Holding Capital Group Inc. and FP Holdings LLC and Opposition to Defendants' Offer to Settle* [AP ECF 30].) In substance, the Landlord objected to approval of the Settlement on two grounds. The Landlord first argued that the Landlord's Offer was superior to the Settlement because the Landlord's Offer provided $25,000 more cash to the estate. The Landlord acknowledged that its offer did not account for the Holdings Claim but argued that, "in the face of the [Landlord's Claim Objection] . . . , the withdrawal of the [Holdings Claim] is not as critical as originally contemplated." (9019 Opp'n ¶ 18.) In addition, the Landlord argued that the cash component of the Settlement did not adequately compensate the estate for its claims against Holdings to recover the Debtor's share of the royalties from its licensed trademarks. According to the Landlord, the damages arising from that claim could be "in the several hundreds of thousands of dollars." (*Id.* ¶ 19.) The 9019 Opposition closed by requesting an adjournment of the November 4 hearing "pending the resolution of the [Landlord's Claim Objection]" and, ultimately, for approval of the Landlord's Offer "instead of and in place of" the Settlement. (*Id.* at 9.)

At the November 4 hearing, the Landlord did not press its request for an adjournment, and the Court proceeded to consider the merits of the Settlement for the second time. During the hearing, Landlord's counsel advanced two principal arguments for denial of the 9019 Motion. The Landlord first argued that the Court had an obligation to review the Settlement in light of the alternatives available to the Trustee, including the Landlord's Offer.[11] The Court rejected that argument, holding that it was required to assess the Settlement solely under the Rule 9019

---

[11] Landlord's counsel pressed that argument throughout the hearing. (*See, e.g.*, Nov. 4, 2014 Hr'g Tr. 11:19-22 ("Your Honor, I understand that [the Trustee does not believe that the Landlord's Offer is better than the Settlement] but I think the Court has an obligation to look at why [the Trustee]'s not taking [the Landlord's Offer] because he has not articulated to me why the [Settlement] is better."); *id.* at 13:4-7 ("Your Honor, I understand it's [the Trustee's] decision but I think the Court has an independent obligation under case law to review that decision against what else is out there.").)

standards – not to consider whether the Settlement was higher and better than any competing

offers.[12]

In doing so, however, the Court did not ignore the Landlord's Offer. Speaking to

Landlord's counsel, the Court questioned why, if the Holdings Claim were ultimately allowed,

the Landlord's Offer did not guarantee the same *pro rata* distribution to Holdings as it did to the

other unsecured creditors.[13] The Court asked whether the Landlord would address that issue by

---

[12] During the hearing, the Court applied the standards under Rule 9019 as follows:

> [T]he determination is whether the settlement that the Trustee proposes under a 9019 standard
> satisfies that standard, it's not whether it's relative to something else. Now many people take the
> position the more money you get . . . the better. But interfering with the Trustee's business
> decision [is something] I'm loath[ ] to do. I may not agree with it but . . . I think it meets [the Rule
> 9019 standard].

*        *        *        *

> It all comes down to a single question, whether the Trustee has presented a settlement that meets
> the 9019 standard. The fact that [the Landlord] may be offering more but [the Trustee]'s decided
> it's not better, which is a 363 standard, that's his business decision.

(Nov. 4, 2014 Hr'g Tr. 10:18-11:13.) The Court then had the following discussion with Landlord's counsel:

> THE COURT: The point is I'm not prepared on the facts of this case to interfere with the Trustee's
> decision as to which [offer] to take. Doesn't mean I would do the same thing, it doesn't mean [the
> Landlord] would do the same thing. But [the Trustee] does meet a 9019 standard. He's getting
> $105,000 and a waiver of a $723,000 [sic] claim. I understand your position that he's walking
> away from significant potential returns against [Holdings]. [It is] his decision.

> MR. GRAUBARD: Your Honor, I understand it's his decision but I think the Court has an
> independent obligation under the case law to review that decision against what else is out there.

> THE COURT: Well I'm not sure it's against what else is out there. What I think is, it's a 9019
> standard . . . . [W]e have a Trustee who's willing to take [$105,000], not [$130,000], less
> money . . . [T]his isn't an auction, where it's two standards, higher and better. It's [the Trustee's]
> decision.

> MR. GRAUBARD: I understand, Your Honor.

> THE COURT: You disagree with it. The law basically says as long as his settlement that he wants
> to accept meets the standard of a 9019 I think the Court should approve it.

(*Id.* 12:20-13:19.)

[13] In part, the colloquy among the Court and Landlord's counsel was as follows:

> THE COURT: Hold it. [The Landlord's Offer] proposes to pay a fraction of the unsecured
> creditors what they would get under [the Trustee]'s settlement. Correct?

guaranteeing the same *pro rata* recovery to Holdings to the extent the Holdings Claim was

allowed. Counsel stated that the Landlord "might be willing to do that to take the chance on this

litigation," but stated that he would need additional time to consult with his client to give a

definitive answer. (Nov. 4, 2014 Hr'g Tr. 16:19-20.) The Court declined to give the Landlord

any additional time.[14]

Next, Landlord's counsel argued that his client was entitled to an evidentiary hearing to

consider "whether or not [the Settlement] meets the lower end of the [range of] reasonableness."

(*Id.* at 13:25-14:1.) Counsel argued that the Landlord should be allowed to adduce evidence as to

the value of the Trustee's eighth cause of action to recover the royalty payments from Holdings,

which the Landlord contended had been undervalued by the Trustee. The Court declined to take

any evidence on the issue, instead asking the Trustee to explain his position as to the value of

that claim. In response, the Trustee stated his understanding that Holdings had not actually

---

MR. GRAUBARD: We guarantee that, yes.

THE COURT: Right.

MR. GRAUBARD: So that there's no downside to it.

THE COURT: If you can't successfully object to [the Holdings Claim], how would you do that? Why wouldn't you have to pay [Holdings] the same way you pay the other [creditors]?

MR. GRAUBARD: Because the guarantee that [the Trustee]'s complaint was that the rest of the general –

THE COURT: How do you bifurcate the unsecured creditors and pay one group [something] and another group something else? If you can't beat the [Holdings Claim], what if I make you guarantee – how much is [the Holdings Claim]?

MR. GRAUBARD: Seven hundred and twenty-seven thousand.

MR. GERON: Seven hundred and twenty-seven thousand dollars, Your Honor.

THE COURT: Seven hundred – the same proportion of $727,000 that you paid everybody else.

(Nov. 4, 2014 Hr'g Tr. 15:22-16:17.)

[14] The Court explained that it "[did not] think that's reasonable" and that the parties were "spending too much time on this [matter]." (Nov. 4, 2014 Hr'g Tr. 16:21-22.)

received any payments on account of its sublicenses, meaning that there were no royalty

payments to be recovered. The Trustee also stated that the Landlord had not done its own

investigation and was relying on the information that had been obtained by the Trustee.[15] The

Landlord vigorously disputed that contention, arguing instead that the Trustee's information had

actually come from the Landlord.[16]

The Court overruled the Landlord's objection to the Settlement and granted the 9019

Motion. The Court summed up its analysis as follows:

> The Trustee is an experienced trustee, he's an experienced practitioner, he
> believes this is the best deal even in light of [the Landlord's] offer. I think that
> meets at least the lowest standard of 9019 therefore I'm going to approve the
> settlement.

(*Id.* at 16:22-17:1.) On November 5, 2014, the Court entered an order approving the Settlement.

(*See Order, Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, Approving a*

*Settlement Agreement between the Chapter 7 Trustee and (1) Holding Capital Group Inc. and*

*(2) FP Holdings LLC* [ECF 57].)

---

[15]  The Trustee stated:

> My information is that [the royalty payments] were not made . . . . And I want to just remind the
> parties that [the Landlord] has not presented any evidence, has not investigated any evidence. The
> only allegations he's making are [based on] information that I provided to . . . him in connection
> with trying to understand what the claims were.

(Nov. 4, 2014 Hr'g Tr. 14:17-24.)

[16]  Landlord's counsel stated:

> Your Honor, [the Trustee] just made a statement that our information . . . on the eighth cause of
> action came from what he said. That's totally untrue . . . .
>
> We have been in contact with [the Debtor's principal, Mr. Payard] about that information . . . Mr.
> Kirschenbaum, the principal of the Landlord, has obtained that information. And we've shown
> that . . . the locations are in Korea, Japan, Las Vegas, where they have licenses out for which the
> Trustee has never accounted for one iota of [the license royalties].

(Nov. 4, 2014 Hr'g Tr. 15:5-19.)

On November 18, 2014, the Landlord filed the Motion now before the Court. (*See Motion Pursuant to F.R.B.P. 9023 With Respect to this Court's Order Entered November 6, 2014 [sic] Approving Settlement between Plaintiff and Defendants* [AP ECF 38].) In the Motion, the Landlord alleges that the Court made three manifest errors of fact in approving the Settlement. *First*, the Landlord argues that the Court erred in approving the Settlement because the Trustee failed to adequately justify his rejection of the Landlord's Offer.[17] (*See* Motion ¶ 6(b) ("Nowhere on the record did the Trustee articulate any of [the] alleged reasons . . . why . . . the [Landlord's Offer] did not make sense.").) *Second*, the Landlord argues that the Court erred by crediting the Trustee's statements regarding the license royalties. (*See id.* ¶¶ 13, 14(d) ("[The Landlord's principal] was specifically informed by [Mr. Payard, the Debtor's principal] that the license fees yielded about $20,000 per month . . . . [F]or the Trustee to allege that no payments were made in license fees[ ] is simply without foundation.").) *Third*, the Landlord argues that the Court erred by not allowing Landlord's counsel time to contact his client about revising the Landlord's Offer to account for the Holdings Claim. (*See id.* ¶ 21 ("The Landlord maintains that there was an

---

[17] At the November 4 hearing, the Court posed that question directly to the Trustee:

> THE COURT: My only question is, the Landlord claims to be offering $130,000 plus a guarantee to [unsecured creditors] that is equal to the deal you're currently getting but where you're getting $105,000. So why isn't [$130,000] better than [$105,000]?

> MR. GERON: Because the Landlord . . . would have to prosecute claims on behalf of the estate which I'm concerned about. I do not want to delegate my powers to prosecute claims and to settle them to whatever extent is necessary to the Landlord or its counsel.

(Nov. 4, 2014 Hr'g Tr. 7:8-16.) In the Motion, the Landlord challenged the validity of this reasoning:

> [The statements made by the Trustee are] really not a genuine concern because the Landlord offered to continue the Adversary Proceeding against the Defendants at no cost to the estate; either in the Trustee's name with the Trustee's consultation on any future events on the Adversary Proceeding; or in the Landlord's name on behalf of the estate, which has been recognized by the case law.

(Motion ¶ 6(c) (citation omitted).)

abuse of discretion in not permitting [Landlord's counsel] to consult with his client [about the Holdings Claim]."].)

   In addition, the Landlord argues that the Court made manifest errors of law by "not making an independent investigation into the merits of the [Settlement] in order for the Court to draw its own conclusion . . . [and by not] testing the propriety of the Trustee in rejecting the offer made by the Landlord." (*Id.* ¶ 43; *see also id.* ¶ 28 ("[The Court] made a manifest error of law in not conducting an evidentiary hearing with regard to the merits of the [Settlement] and accepting as 'gospel' the unsupported statements of the Trustee with regard to the eighth cause of action.").)

   On April 23, 2015, the Trustee, joined by the Defendants,[18] filed opposition to the Motion (the "Opposition"). (*See Trustee's Objection to Motion by 1032-1034 Lex. Ave. Ltd. for Reconsideration of this Court's Order Entered November 5, 2014 Approving Settlement between Trustee and Defendants* [AP ECF 46].) The Trustee argues that (i) the Court was not required to hold an evidentiary hearing on the 9019 Motion, (Opp'n ¶ 17), (ii) the Trustee conducted a "sufficiently fulsome" investigation of the estate's claims prior to entering into the Settlement, (*id.* ¶ 19), (iii) the Court, by its statements on the record, "amply demonstrated that [it] had apprised itself of the relevant facts and was basing its decision on an independent, informed analysis," (*id.* ¶ 20), and (iv) the fact that the Landlord is the largest single creditor does not allow it to "usurp the Trustee's business judgment as a fiduciary of the estate," (*id.* ¶ 25).

   On May 7, 2015, the Landlord filed its reply (the "Reply"). According to the Reply, the Court "does not have to have a full blown evidentiary hearing, but must conduct a hearing that

---

[18] *See Attorney's Certification in Opposition to Motion of 1032-1034 Lex. Ave. Ltd. for Reconsideration of this Court's Order Approving Settlement of Adversary Proceeding between Trustee and Defendants* [AP ECF 48].

will present testimony and other evidence to produce a record on which the Bankruptcy Judge

can make an informed decision on the proposed settlement." (Reply ¶ 7.) The Landlord argues

that the November 4 hearing was not sufficient:

> [A] review of the [transcript from the November 4 hearing] shows that there were
> *no presentations of specific facts* to refute the Landlord's contention that the
> eighth cause of action on the license fees had not been properly addressed by the
> Trustee in connection with the Settlement and, in fact, had never even been
> pursued properly in the underlying Adversary Proceeding.

(*Id.* ¶ 12 (emphasis in original); *see also id.* ¶¶ 13(a), (c) ("[T]he Court gave credence to the

Trustee's limited statement . . . that the payments had not been made . . . . For the Court to rely

on the Trustee's unfounded statements that there were no payments made on the license fees[ ] is

incredible.").)

A hearing on the Motion was held on May 21, 2015, after which the Court took the

matter under advisement.

## Discussion

### A.    Standard of Review

The Motion seeks reconsideration of the order approving the Settlement under Rule 59(e)

of the Federal Rules of Civil Procedure ("Rule 59(e)"), made applicable here pursuant to Rule

9023 of the Federal Rules of Bankruptcy Procedure ("Rule 9023"). *See Lyell Theatre Corp. v.

Loews Corp.*, 682 F.2d 37, 41 (2d Cir. 1982) ("[W]here a post-judgment motion is timely filed

and calls into question the correctness of [the] judgment it should be treated as a motion under

FRCP 59(e), however it may be formally styled." (citation and internal quotation marks

omitted)). Motions for reconsideration under Rule 59(e) are governed by Local Bankruptcy Rule

9023-1(a), which provides:

> A motion for reargument of a court order determining a motion shall be served
> within fourteen (14) days after the entry of the Court's order determining the

original motion . . . . The motion shall set forth concisely the matters or
controlling decisions which counsel believes the Court has not considered. No
oral argument shall be heard unless the Court grants the motion and specifically
orders that the matter be reargued orally.

Bankr. S.D.N.Y. R. 9023-1(a).

"Reconsideration of a previous order by the court is an 'extraordinary remedy to be

employed sparingly in the interests of finality and conservation of scarce judicial resources.'"

*Cordero v. Astrue*, 574 F. Supp. 2d 373, 380 (S.D.N.Y. 2008) (quoting *In re Health Mgmt. Sys.*

*Inc. Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)). Accordingly, the standard for

granting a motion for reconsideration is "strict." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257

(2d Cir. 1995). "The only proper ground on which a party may move to reargue an unambiguous

order is that the court overlooked 'matters or controlling decisions' which, had they been

considered, might reasonably have altered the result reached by the court." *Adams v. U.S.*, 686 F.

Supp. 417, 418 (S.D.N.Y. 1988) (quoting *Bozsi Ltd. P'ship v. Lynott*, 676 F. Supp. 505, 509

(S.D.N.Y. 1987)); *see also In re Asia Global Crossing, Ltd.*, 332 B.R. 520, 524 (Bankr. S.D.N.Y.

2005) ("[A party seeking reconsideration] must show that the court overlooked controlling

decisions or factual matters that might materially have influenced its earlier decision." (citation

and internal quotation marks omitted)).

The standards governing reconsideration are designed to "ensure the finality of decisions

and . . . prevent the practice of a losing party examining a decision and then plugging the gaps of

a lost motion with additional matters." *Carolco Pictures, Inc. v. Sirota*, 700 F. Supp. 169, 170

(S.D.N.Y. 1988). Accordingly, motions for reconsideration may not "advance new facts, issues,

or arguments not previously presented to the court." *Morse/Diesel, Inc. v. Fidelity & Deposit*

*Co.*, 768 F. Supp. 115, 116 (S.D.N.Y. 1991); *see also Taub v. Hershkowitz (In re Taub)*, 421

B.R. 93, 101 (Bankr. E.D.N.Y. 2009) ("A Rule 59 motion is not a proper tool to repackage and

relitigate arguments and issues already considered by the court in deciding the original motion."
(citation and internal quotation marks omitted)). The moving party bears the burden of
demonstrating that reconsideration is warranted. *In re Crozier Bros., Inc.*, 60 B.R. 683, 688
(Bankr. S.D.N.Y. 1986) ("A motion based on manifest errors of law or fact will not be granted
except on a showing of some substantial reason. The burden is on the movant to demonstrate
[the] manifest errors.").

### B.    Alleged Errors of Fact

As previously noted, the Landlord alleges that the Court made three manifest errors of
fact in approving the Settlement. The Landlord first contends that the Court should not have
approved the Settlement because the Trustee failed to justify his rejection of the Landlord's
Offer. At the November 4 hearing, the Trustee stated that the Landlord's Offer did not make
sense for "a number of reasons." (Nov. 4, 2014 Hr'g Tr. 4:8.) According to the Landlord,
however, the Trustee did not articulate any of those reasons. (Motion ¶ 6(b) ("Nowhere on the
record did the Trustee articulate . . . why . . . the [Landlord's Offer] did not make sense."); *see id.*
¶ 6(c) (arguing that the Trustee could not have had any "genuine concern" with the Landlord
continuing the Adversary Proceeding).) This provides no ground for relief under Rule 59(e).[19]

---

[19] The Landlord is incorrect that the Trustee did not justify his rejection of the Landlord's Offer. At the November 4
hearing, the Trustee explained that he refused the offer because he was uncomfortable delegating the prosecution
of the estate's claims to the Landlord. The Trustee stated:

> [Under the Landlord's Offer], the Landlord would have to prosecute claims on behalf of the estate,
> which I'm concerned about. I do not want to delegate my powers to prosecute claims and to settle
> them to whatever extent is necessary to the Landlord or its counsel . . . .

(Nov. 4, 2014 Hr'g Tr. 7:13-16.) The Court acknowledged this position in a later colloquy with Landlord's
counsel:

> MR. GRAUBARD: . . . . I think the Court has an obligation to look at why at why [the Trustee]'s
> not taking [the Landlord's Offer] because he has not articulated to me why the [Settlement] is
> better."

> THE COURT: [Because] he doesn't want to vest you with his authority to sue.

The Landlord does not contend that, in approving the Settlement, the Court "overlooked" material facts in the record regarding the Trustee's analysis and rejection of the Landlord's Offer. Its disagreement with the Trustee's stated reasons for refusing the offer is not grounds for relief. *Saratoga Harness Racing, Inc. v. Veneglia*, 897 F. Supp. 38, 41 (N.D.N.Y. 1995) ("[A] motion for reconsideration is not a device intended to give an unhappy litigant one additional chance to sway the judge." (citation and internal quotation marks omitted)).

The Landlord next argues that the Trustee failed to investigate or appropriately value the estate's claim (Count Eight) to recover royalty payments from Holdings:

> Clearly, it cannot be denied that license fees were paid in connection with the licensing of the Debtor's business to various parts of the United States and the word. Therefore, for the Trustee to allege that no payments were made in license fees[ ] is simply without foundation.
>
> The Court did not test the Trustee on what his "information" was that "those payments were not made." No facts were offered to support this assertion by the Trustee. The truth is otherwise.

(Motion ¶¶ 14(d), 15.)[20] This likewise lends no support to the Landlord's argument. Not only does the Landlord not contend that the Court overlooked pertinent matters in the record that, if considered, would have altered the Court's judgment, but it also acknowledges that its argument regarding Count Eight "was made on the record to the Court [at the November 4 hearing]." (Motion ¶ 16.) As noted, motions for reconsideration may not be used to "repackage and relitigate arguments and issues already considered by the court in deciding the original motion."

---

(*Id.* at 11:19-24.)

[20] The Motion attaches documents that purportedly support the Landlord's contention that royalty payments were made. (*See* Motion Exs. D, E, G, H, I & J; *see also* Reply Exs. L & M.) However, those documents were not introduced into evidence at either the March 11 or November 4 hearings. They are not properly presented to the Court by way of a motion for reconsideration. *See Wishner v. Cont'l Airlines*, No. 94 Civ. 8239 (LAP), 1997 WL 615401, at *1 (S.D.N.Y. Oct. 6, 1997) ("No affidavits or new material may be submitted [in connection with a motion for reconsideration], because such a motion is limited to the record that was before the court on the original motion." (citation and internal quotation marks omitted)).

*Taub*, 421 B.R. at 101; *see also Lowinger v. Morgan Stanley & Co. (In re Facebook, Inc., IPO Sec. & Derivative Litig.)*, 43 F. Supp. 3d 369, 373 (S.D.N.Y. 2014) ("Motions for reconsideration are not vehicles for taking a second bite at the apple . . . ." (citation and internal quotation marks omitted)).

Finally, the Landlord argues that the Court erred in denying counsel's request at the November 4 hearing for an opportunity to speak with his client regarding the treatment of the Holdings Claim under the Landlord's Offer. (*See* Motion ¶ 21 ("The Landlord maintains that there was an abuse of discretion in not permitting the attorney for the Landlord to consult with his client in order to respond to the Court's inquiry about the [treatment of the Holdings Claim].").) Again, the Landlord is not contending that the Court overlooked or misapplied material facts in the record. Rather, it is challenging the Court's conduct of the settlement hearing and, in particular, one ruling during that hearing. The Court's alleged error is not grounds for reconsideration.[21] *See, e.g.*, *Cohen v. Koenig*, 932 F. Supp. 505, 506-07 (S.D.N.Y. 1996) ("[T]he court must not allow a party to use the motion to reargue as a substitute for appealing from a final judgment . . . . [Thus, 'errors' identified by a party moving for

---

[21] To be clear, the Court disagrees that denying counsel additional time to contact his client was an abuse of discretion. The Landlord had seven months to formulate its offer. As presented to the Court, the offer was fatally defective in that all of the unsecured creditors other than Holdings had been guaranteed a minimum recovery by the Landlord (in the event the Holdings Claim was allowed). Thus, if the Landlord's Offer was accepted and the Holdings Claim was allowed, Holdings would receive a lower distribution than the other unsecured creditors. Such a result would be impermissible. *See* 11 U.S.C. § 726(b) ("Payment on [unsecured claims] shall be made *pro rata* among [such claims] . . . ."). The Landlord should have been prepared at the hearing to address this deficiency in its offer.

In the Motion, the Landlord argues that the proposed difference in treatment between Holdings and the other unsecured creditors "really has no bearing on the case" because Holdings had agreed to waive its claim as part of the Settlement. (Motion ¶ 22.) Thus, any recovery by Holdings as an unsecured creditor would be "more than [it] would have gotten under the Settlement." (*Id.* ¶ 22(b).) This argument misses the point. Holdings cannot be paid a lower dividend than other similarly-situated unsecured creditors, so the Landlord's Offer – as presented to the Court at the November 4 hearing – could not be approved.

reconsideration] may be grounds for appeal, but they do not warrant granting a Rule 59 motion."
(citation and internal quotation marks omitted)).

Based on the foregoing, the Court holds that none of the alleged errors of fact identified
by the Landlord provide grounds for relief under Rule 59(e).

### C.    <u>Alleged Errors of Law</u>

The Landlord alleges that the Court committed two manifest errors of law. The first
alleged error was in not holding an evidentiary hearing so that the Court could "mak[e] an
independent investigation into the merits of" the Settlement. (Motion ¶ 43; *see also id.* ¶ 28
("[The Court] made a manifest error of law in not conducting an evidentiary hearing with regard
to the merits of the [Settlement] . . . .").) The second alleged error was in "not . . . testing the
propriety of the Trustee in rejecting the offer made by the Landlord." (*Id.* ¶ 43.) Neither
contention has merit.

Turning first to the second contention, as discussed above, the Court plainly tested the
propriety of the Landlord's Offer and properly rejected it as being in violation of the Bankruptcy
Code's mandate of equal treatment for similarly-situated creditors. (*See* Nov. 4, 2014 Hr'g Tr.
15:22-16:17.). It committed no error in doing so.

As to the first contention, the Landlord made the same argument during the November 4
hearing. Thus, it is not grounds for relief under Rule 59(e). *Taub*, 421 B.R. at 101; *Lowinger*, 43
F. Supp. 3d at 373. In any event, the Court was not required to hold an evidentiary hearing or
conduct an independent investigation into the merits of the Settlement. The review of the
Settlement undertaken by the Court satisfied Rule 9019's standards. That rule states that, "[o]n
motion by the trustee and after notice and a hearing, the court may approve a compromise or
settlement." Fed. R. Bankr. P. 9019(a). "Settlements and compromises are favored in bankruptcy

as they minimize costly litigation and further parties' interests in expediting the administration of the bankruptcy estate." *HSBC Bank USA v. Fane (In re MF Global, Inc.)*, 466 B.R. 244, 247 (Bankr. S.D.N.Y. 2012). Before it may approve a settlement, "[a] court must determine that [the settlement] is fair, equitable, and in the best interests of the estate." *Id.* "In order to determine if a settlement meets these standards, a court must be apprised of all factors relevant to a full and fair assessment of the wisdom of the proposed compromise." *JPMorgan Chase Bank, N.A. v. Charter Commc'ns Operating, LLC (In re Charter Commc'ns)*, 419 B.R. 221, 252 (Bankr. S.D.N.Y. 2009) (citation and internal quotation marks omitted).

It is well settled that a bankruptcy court "need not conduct an independent investigation into the reasonableness of [a] settlement." *In re Chemtura Corp.*, 439 B.R. 561, 594 (Bankr. S.D.N.Y. 2010). Nor is it necessary for the court to "conduct a 'mini-trial' on the facts or the merits of the underlying dispute." *Id.*; *see also In re Dewey & LeBoeuf LLP*, 478 B.R. 627, 640 (Bankr. S.D.N.Y. 2012) ("[T]he Court need not decide the numerous issues of law and fact raised by a compromise or settlement, but must only canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." ((citation and internal quotation marks omitted)). Contrary to the Landlord's contention, "there is no legal requirement that a bankruptcy court hold an evidentiary hearing before approving a settlement." *Topwater Exclusive Fund III, LLC v. SageCrest II, LLC (In re SageCrest II, LLC)*, Nos. 3:10-cv-978, 3:10-cv-979 (SRU), 2011 WL 134893, at *10 (D. Conn. Jan. 14, 2011) (citing *Depoister v. Mary M. Holloway Found.*, 36 F.3d 582, 586 (7th Cir. 1994)).[22]

---

[22] The cases cited by the Landlord are not to the contrary and merely confirm the proposition that a bankruptcy court must form an independent judgment as to the merits of a settlement. For example, in *LaSalle National Bank v. Holland (In re American Reserve Corp.)*, the court held that bankruptcy courts may not "merely 'rubber-stamp'" a proposed settlement and must "give the reviewing court some basis for distinguishing between well-reasoned conclusions . . . and mere boilerplate approval." 841 F.2d 159, 162 (7th Cir. 1987) (citation and internal quotation marks omitted). Similarly, in *In re Boston & Providence R.R. Corp.*, the court held that bankruptcy courts must "form an independent judgment of the complexity, expense, and duration of the litigation" and must

Here, the Court appropriately canvassed the issues and determined that the Settlement fell within the range of reasonableness. It did not err in rejecting the Landlord's call for an evidentiary hearing. The undisputed record from the March 11 hearing reflects that the Trustee (i) negotiated extensively with the Defendants over the terms of the Settlement; (ii) engaged in document discovery, analyzed the Defendants' potential defenses, and considered the cost of litigation; (iii) did not believe a higher net recovery could be achieved by litigating, and (iv) believed that the Settlement was in the best interests of creditors. Moreover, as set forth on the record of the November 4 hearing, the Trustee determined that Count Eight of the Adversary Proceeding had little value and that, in his judgment, the cash payment of $105,000, coupled with the waiver of the Holdings Claim, was fair consideration to settle the action. The Court was entitled to consider the Trustee's opinion in evaluating the Settlement. *See In re Adelphia Commc'ns Corp.*, 327 B.R. 143, 159 (Bankr. S.D.N.Y. 2005) ("In [evaluating a settlement], the court is permitted to rely upon the opinions of the trustee, the parties, and their attorneys." (citation and internal quotation marks omitted)); *see also O'Connell v. Packles (In re Hilsen)*, 404 B.R. 58, 70 (Bankr. E.D.N.Y. 2009) ("The trustee's business judgment plays a role in the settlement of a claim that is property of the chapter 7 bankruptcy estate."). The fact that the Landlord's claims represent a significant portion of the unsecured debt in this case did not give it veto power over the Settlement. *Plaza Equities, LLC v. Pauker (In re Copperfield Inv., LLC)*,

---

"set forth [their analysis] on the record in sufficient detail that a reviewing court [can] distinguish it from mere boilerplate approval of the trustee's suggestions." 673 F.2d 11, 12 (1st Cir. 1982) (citation and internal quotation marks omitted). Finally, in *Jeffrey v. Desmond*, the court affirmed the bankruptcy court's approval of a settlement where the bankruptcy court had "spent considerable time evaluating [the factors relevant to a 9019 analysis] when it assessed the value to the estate of the compromise proposal." 70 F.3d 183, 185 (1st Cir. 1995). None of the cases specifically require bankruptcy courts to hold an evidentiary hearing. In fact, the only one of the cases that specifically mentions the taking of testimony – *American Reserve* – was decided by the Seventh Circuit, which seven years later held that "[a] bankruptcy court's failure to conduct an evidentiary hearing [before approving a settlement], without more, is not reversible error." *Depoister*, 36 F.3d at 586.

401 B.R. 87, 96 (Bankr. E.D.N.Y. 2009) ("[A] creditor – even a creditor holding the

overwhelming majority of claims in the case – [may not] arbitrarily veto a settlement that

otherwise satisfies the criteria for approval.").

Based on the foregoing, the Court holds that neither of the alleged errors of law identified

by the Landlord provide grounds for relief under Rule 59(e).

### Conclusion

For the foregoing reasons, the Motion is **DENIED.**

**IT IS SO ORDERED.**

Dated: New York, New York
May 29, 2015

/s/ *James L. Garrity, Jr.*
The Honorable James L. Garrity, Jr.
United States Bankruptcy Judge