UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

| | | |
|---|---|---|
| *In re:* | : | |
| | : | |
| PBS FOODS, LLC d/b/a PAYARD | : | Case No. 09-15629 (JLG) |
| PATISSERIE & BISTRO, | : | Chapter 7 |
| *Debtor* | : | |

---------------------------------------------------------------x

| | | |
|---|---|---|
| YANN GERON, Chapter 7 Trustee of the | | |
| Estate of PBS FOODS, LLC d/b/a/ PAYARD | | |
| PATISSERIE & BISTRO, | : | |
| | : | |
| *Plaintiff* | : | |
| | : | |
| *v.* | : | Adv. Proc. No. 11-02717 (JLG) |
| | : | |
| HOLDING CAPITAL GROUP, INC. and | : | |
| FP HOLDINGS, LLC, | : | |
| | | |
| *Defendants* | | |

---------------------------------------------------------------x

### MEMORANDUM DECISION AND ORDER DENYING LANDLORD'S MOTION
### PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9024

**A P P E A R A N C E S :**

KERA & GRAUBARD
*Attorneys for 1032-1034 Lex. Ave., Ltd.*
240 Madison Avenue, 7th Floor
New York, New York, 10016
<u>By:</u>    M. David Graubard, Esq.

AVROM R. VANN, P.C.
Attorneys for 1032-1034 Lex Ave., Ltd.
1211 Avenue of the Americas, 40th Floor
New York, New York 10036
<u>By:</u>    Avrom R. Vann, Esq.

FOX ROTHSCHILD LLP
*Attorneys for Plaintiff Yann Geron, Chapter 7*
*Trustee of the Estate of PBS Foods, LLC d/b/a*
*Payard Patisserie & Bistro*
100 Park Avenue, Suite 1500
New York, New York 10017
<u>By:</u>    Yann Geron, Esq.

BLEAKLEY PLATT & SCHMIDT, LLP
Attorneys for Defendants Holding Capital Group, Inc. and
FP Holdings, LLC
One North Lexington Avenue
White Plains, New York 10601
<u>By</u>:    Richard F. Markert, Esq.
         John I. O'Neill, Esq.

**JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

The matter before the Court is the motion [ECF Doc. No. 67[1]; AP ECF Doc. No. 66[2]]

(the "**Motion**")[3] of 1032-1034 Lex. Ave. Ltd. (the "**Landlord**"), the former landlord of PBS

Foods, LLC d/b/a Payard Patisserie & Bistro (the "**Debtor**") under Rule 9024 of the Federal

Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") for relief from an order of this Court,

dated November 5, 2014 [ECF Doc. No. 57] (the "**Rule 9019 Order**"), approving a settlement

and compromise of all claims asserted in this adversary proceeding (the "**Settlement Offer**") by

and Yann Geron (the "**Trustee**"), as plaintiff and chapter 7 trustee of the Debtor's estate, against

Holding Capital Group, Inc. ("**HCG**"), and FP Holdings, LLC ("**Holdings**", and collectively

with HCG, the "**Defendants**").

---

[1]  Citations to "ECF Doc. No. __" or to "AP ECF Doc. No. __" refer to the location that the referenced document can be found on the Court's electronic case filing dockets for the Debtor's case, 09-15629, and this adversary proceeding, 11-02717, respectively.  Any other adversary proceeding referenced herein will be specifically referenced by the relevant adversary proceeding number, followed by "AP ECF Doc. No. __", such as related to the Other Adversary Proceedings (defined below). References to "ECF S.D.N.Y. Doc. No. __" refer to the electronic docket maintained in the Appeal (defined below).

[2]  At times, parties filed the same document in both the Debtor's main bankruptcy case and this adversary proceeding, and/or related adversary proceedings in the Debtor's case.  To avoid confusion of the record, reference will be made to both entries where appropriate.

[3]  In support of the Motion, Landlord filed an *Attorney's Certification In Support of Landlord's Motion Pursuant to F.R.B.P. 9024* (ECF Doc. No. 67; AP ECF Doc. No. 66] ("**Graubard Certification**"); a *Certification of the Debtor's Landlord, 1032-1034 Lex. Ave. Ltd In Support of Its Motion Under F.R.B.P. 9024* [ECF Doc. No. 68; AP ECF Doc. No. 67] ("**Landlord Certification**"); and the *Landlord's Reply Certification in Support of Motion Under F.R.B.P. 9024*, which was a certification by counsel to the Landlord [ECF Doc. No. 70; AP ECF Doc. No. 78] (the "**Graubard Reply Certification**").

The Landlord contends that it is in possession of "newly discovered evidence" (defined *infra* p. 11 as the "**New Documents**") which should have been produced by the Trustee in response to the Landlord's discovery requests relating to the Trustee's motion under Bankruptcy Rule 9019 for approval of the Settlement Offer [ECF Doc. No. 45] (the "**Rule 9019 Motion**") and which, if considered by the Court, would have altered the Court's decision to approve that motion. The Landlord also contends that a review of the contents of the New Documents proves that during the Renewed Rule 9019 Hearing (defined *infra* p. 8) the Trustee mispresented facts to the Court. The Landlord asserts that in the face of that conduct, and pursuant to Rules 60(b)(2), (3), and (6) of the Federal Rules of Civil Procedure, made applicable herein by Bankruptcy Rule 9024, this Court should vacate the Rule 9019 Order. The Trustee and the Defendants oppose the Motion.[4]

The Rule 9019 Order is the subject of a pending appeal, and, accordingly, the Court has no jurisdiction to grant the Motion. Nonetheless, under Bankruptcy Rule 8008(a), the Court is authorized to (i) defer considering the Motion, (ii) deny the Motion, or (iii) issue an indicative ruling by stating that the Motion raises a substantial issue or that the Court would grant the Motion if the District Court remands the matter for that purpose. Based upon the record of this matter, and as explained below, the Court finds that the Landlord has not established a right to relief from the Rule 9019 Order. Accordingly, the Motion is **DENIED**.

---

[4] See *Trustee's Objection to Motion By 1032-1034 Lex. Ave. Ltd. For Relief from This Court's Order Entered November 5, 2014 Approving Settlement Between Trustee and Defendants*, dated November 16, 2015 [AP ECF Doc. No. 69] (the "**Trustee Objection**") and the *Attorney's Certification in Opposition to Motion By 1032-1034 Lex. Ave. Ltd. Pursuant to F.R.B.P. 9024*, dated November 16, 2015 [AP ECF Doc. No. 71] (the "**Defendants' Objection**").

## Jurisdiction

This Memorandum Decision constitutes our findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a), as made applicable herein by Bankruptcy Rules 7052 and 9014(c).  The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(a) and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York, dated January 31, 2012 (Preska, C.J.)  This is a "core proceeding."  *See* 28 U.S.C. § 157(b)(2)(A) and (B).

## Background[5]

On September 17, 2009 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 7 of Title 11 of the United States Code (the "**Bankruptcy Code**") in this court.  After the Petition Date, the Trustee qualified and is currently serving as chapter 7 trustee of the Debtor's estate. Prior to the Petition Date, the Debtor operated as a restaurant in New York City in premises leased to it by the Landlord.  The bankruptcy filing was precipitated, in part, by a dispute between the Debtor and the Landlord arising out of Debtor's alleged breach of its lease. The Landlord may be the Debtor's largest creditor, having filed an unsecured claim in the sum of $1,282,577.70 based, in part, on a prepetition judgment against the Debtor.

On or about September 16, 2011, the Trustee commenced this adversary proceeding to avoid and recover certain transfers of funds by the Debtor to the Defendants, and for related relief.  The underlying complaint [AP ECF Doc. No. 1] (the "**Complaint**") pled eight causes of

---

[5] The facts and procedural history relevant to this matter are discussed at length in the Court's prior Memorandum Decision and Order, dated May 29, 2015, denying the Landlord's Rule 9023 Motion (defined below*).  See Geron v. Holding Capital Group Inc. (In re PBS LLC d/b/a Payard Patisseries & Bistro)*, Case No. 09-15629, Adv. No. 11-02717, 2015 WL 3465815 (Bankr. S.D.N.Y., May 29, 2015) ("**In re PBS LLC I**").  The Court assumes familiarity with that discussion and these proceedings.

action.  Only Count Eight is relevant to the Motion.[6]  In support of that count, the Trustee alleged

that on May 31, 2006, the Debtor, for no consideration, entered into a six year Trademark

License Agreement ("**License Agreement**") with Payard Management LLC ("**Management**") to

license all the trademarks, images and other items to which the Debtor had a right, title and

interest (collectively, the "**Marks**") including, without limitation, the personal image and logo of

the Debtor's principal, Francois Payard ("**Mr. Payard**").  *See* Compl. ¶¶ 72-74.  The Trustee

contended that after executing the License Agreement, Management entered into sublicenses

with entities worldwide, and, since May 31, 2006, Management had been profiting from the use

of the Marks under the License Agreement, including the receipt of $20,000/month under

various sublicense agreements.  *Id.* at ¶¶ 77, 78.  Mr. Payard was the Debtor's sole equity holder

and operating manager.  *Id.* at ¶ 75.  Holdings and Mr. Payard jointly owned Management.  *Id.* at

¶ 76.  The Trustee alleged that Holdings, as a 50% member of Management, "has profited from

the [License] Agreement and the exploitation of the Marks without having compensated the

Debtor" (*id.* at ¶ 79) and "has been unjustly enriched in the form of revenue it has received under

the [License] Agreement and as a member of Management."  *Id.* at ¶ 80.  Thus, the Trustee

contended that "he is entitled to recover from . . . Holdings the value of all income . . . Holdings

has received under the [License] Agreement from May 31, 2006 to the present time."  *Id.* at ¶ 81.

Defendants did not file an answer or otherwise move with respect to the Complaint.

---

[6] In Counts One through Five, the Trustee sought to avoid and recover a number of transfers from the Debtor to each
of the Defendants as preferential and fraudulent transfers under §§ 547, 548, and 550 of the Bankruptcy Code.  In
Counts Six and Seven, he sought to disallow any claims filed by HCG and Holdings pursuant to § 502(d) of the
Bankruptcy Code.

Simultaneously with the commencement of this proceeding, the Trustee filed complaints

against Management,[7] Mr. Payard,[8] and FR Ventures LLC ("**Ventures**")[9] seeking, among other

things, to avoid and recover payments made to them by the Debtor aggregating approximately

$550,000 as alleged preferences and fraudulent conveyances under §§ 547, 548 and 550 of the

Bankruptcy Code.  In the Payard Complaint, the Trustee also asserted damage claims based on

the License Agreement.  Payard Compl. ¶¶ 43-55.  He alleged that Mr. Payard "breached his

fiduciary duty to the Debtor by diverting the business opportunity of exploiting the Marks

through the [License] Agreement with Management, for which the Debtor received no

consideration." *Id.* at ¶ 51.  Accordingly, the Trustee sought "to recover from [Mr. Payard] the

value of all income [Mr. Payard] has received under the [License] Agreement from May 31,

2006 to the present time." *Id*. at ¶ 52.  Alternatively, he contended that, like Holdings, Mr.

Payard had been "unjustly enriched in the form of revenue he has received under the [License]

Agreement and as a member of Management." *Id*. at ¶ 54.  The three actions were resolved by a

single settlement agreement, dated June 7, 2012 [11-02716 AP ECF Doc. No. 13-1] (the

"**Payard Settlement**"),[10]  which was approved by this Court, over the Landlord's objection, by

---

[7] *See Yann Geron, Chapter 7 Trustee of the Estate of PBS Foods, LLC, d/b/a Payard Patisserie & Bistro v. Payard
Management LLC* (Adversary Proceeding 11-02610-jmp) [AP ECF Doc. No. 1].

[8] *See Yann Geron, Chapter 7 Trustee of the Estate of PBS Foods, LLC d/b/a Payard Patisserie & Bistro v. Francois
Payard* (Adversary Proceeding 11-02716-jmp) [AP ECF Doc. No. 1] (the "**Payard Complaint**").

[9] *See Yann Geron, Chapter 7 Trustee of the Estate of PBS Foods, LLC, d/b/a Payard Patisserie & Bistro v. FR
Ventures, LLC*  (Adversary Proceeding 11-02609-jmp) [AP ECF Doc. No. 1].

[10] In part, the Payard Settlement called for Mr. Payard to pay $140,000 to the Debtor's estate on behalf of himself,
Management and Ventures in full satisfaction of the claims asserted against them (including the breach of fiduciary
duty and unjust enrichment claims brought solely against Mr. Payard).  Payard Settlement ¶ 3.  It also called for the
Trustee, on behalf of the estate, to assign to Mr. Payard all of the estate's right, title and interest in and to the
PAYARD mark and all common law rights in and to the PAYARD name, mark and logo along with the goodwill
associated therewith, the portion of the business to which the Mark pertains, and the right to recover damages and
profits for past infringement thereof, if any. *Id.* at ¶ 4.  Those are the same Marks relevant to this adversary
proceeding.  The Landlord opposed the Payard Settlement.  S*ee Objection of 1032-1034 Lexington Ave. Ltd. to the*

6

order dated September 13, 2012.[11]  The Landlord did not appeal or otherwise challenge that order.

In January 2014, the Trustee filed the Rule 9019 Motion for authorization to settle this adversary proceeding.  The Settlement Offer called for (i) Defendants to make a one-time payment of $105,000 to the Trustee; (ii) Holdings to waive its $726,131 claim against the estate; and (iii) Defendants to each waive their claims against the estate under §502(h) of the Code, all in full satisfaction of any and all estate claims against the Defendants.  *See* Rule 9019 Motion ¶¶ 2, 10.  A hearing on the Rule 9019 Motion was originally scheduled for January 29, 2014, but was adjourned on consent at the request of the Landlord to March 11, 2014 (the "**First 9019 Hearing**").[12]  Notwithstanding the Landlord's prior activity in this case, and, in particular, its opposition to the Payard Settlement, the Landlord did not initially file any written response to the Rule 9019 Motion.  Its counsel did appear at the First 9019 Hearing to request that the hearing be adjourned and that the Landlord be given additional time in which to file an objection to the

---

*Trustee's Motion to Settle Three Adversary Proceedings*, dated June 27, 2012 [ECF Doc. No. 33] (the "**Payard Settlement Objection**"); *see also* Graubard Certif. ¶ 7.  In part, in support of its objection, the Landlord contended that given Mr. Payard's ownership interest in Management, any fees paid under the License Agreement were paid for his benefit.  Payard Settlement Obj. ¶¶ 13, 15.  The Landlord complained that since the Trustee had failed to monetize the value of the claims against Mr. Payard relating to the License Agreement, it was impossible for creditors, let alone the Court, to determine whether the $140,000 cash payment by Mr. Payard on behalf of the three defendants under the Payard Settlement was fair and equitable.  *Id.* at ¶ 7.  It also specifically objected to the provision in that settlement requiring the Trustee to assign the Marks to Mr. Payard.  The Landlord asserted that the assignment of that trademark would "compound[] the travesty by which [Mr.] Payard has been allowed to collect license fees for several years without any compensation to the debtor" (*id.* at ¶ 16), and was against the Trustee's own best interests because it would "undercut the validity of the Trustee's claims against [HCG] and Holdings" in that separate adversary proceeding.  *Id.* at ¶ 19.  After conducting a hearing, the Court approved the Payard Settlement.

[11]  A separate order was entered in each of the related adversary proceedings.  *See* 11-02609, AP ECF Doc. No. 26; 11-02610, AP ECF Doc. No. 26; and 11-02716, AP ECF Doc. No. 25.

[12]  References to "Mar. 11, 2014 Tr. _:_" refer to the transcript of the record of the First 9019 Hearing.

Settlement Offer.  Mar. 11, 2014 Tr. at 6:9-10.  The Court (Grossman, J.) [13] denied that request

and, at the conclusion of that hearing, granted the Rule 9019 Motion and directed the Trustee to

submit a proposed order.  *Id.* at 2:22-23; 6:9-12; 7:13-14; 8:13-14.  The Trustee did not do so.

Rather, he treated the motion as having been adjourned *sine die* and initiated discussions with the

Landlord in an effort to resolve the Landlord's objection.  Those discussions grew out of the

Court's suggestion during the First 9019 Hearing that the Landlord consider purchasing the

estate's claims against the Defendants and prosecuting them for its own benefit.  Mar. 11, 2014

Tr. 5:18-19.  The Court explained that since the Landlord believed the estate's claims were worth

substantially more than the Defendants were offering in the Settlement Offer, the Landlord might

be prepared to "sweeten" the offer on the table, and pay the estate more than the Defendants

were offering.  *Id.* at 7:14-16; 8:5-6.  That way the estate would enhance its recovery on account

of those claims, and the Landlord would preserve for itself the upside it believed it could realize

by prosecuting the claims.  The parties were not able to reach an agreement, as the Trustee

rejected the Landlord's offer to purchase the claims (the "**Amended Revised Offer**").  The

Trustee set the matter for further hearing.  On October 28, 2014, the Landlord filed formal

written opposition to the Rule 9019 Motion [AP ECF Doc. No 30] (the "**Landlord's Settlement**

**Objection**").  After a renewed hearing on November 4, 2014 (the "**Renewed Rule 9019**

**Hearing**"),[14] the Court granted the Rule 9019 Motion on the record, and on November 5, 2014

---

[13]  When the Debtor filed this case, it was assigned to the Honorable James M. Peck.  After Judge Peck's retirement
effective January 31, 2014, the case was temporarily assigned to the Honorable Robert E. Grossman, sitting by
designation in the United States Bankruptcy Court for the Southern District of New York pursuant to an order
signed by the Honorable Robert A. Katzmann, Chief Circuit Court Judge for the Second Circuit Court of Appeals.
Judge Grossman presided over this adversary proceeding until it was reassigned to Judge Garrity on February 18,
2015.

[14]  References to "Nov. 4, 2014 Tr. _:_" refer to the transcript of the record of the Renewed Rule 9019 Hearing.

entered the Rule 9019 Order (i) overruling the Landlord's Settlement Objection, (ii) granting the Rule 9019 Motion, and (iii) approving the Settlement Offer.

The Landlord timely filed a Motion for Reconsideration of the Rule 9019 Order [AP ECF Doc. No. 38] (the "**Rule 9023 Motion**").  Among other things, in support of that motion, the Landlord submitted the New Documents.  Both the Trustee and the Defendants opposed the motion.  On May 21, 2015, this Court held a hearing on the Rule 9023 Motion, and on May 29, 2015, denied that motion.  *See In re PBS LLC I*, 2013 WL 3465815.  On June 12, 2015, the Landlord filed a Notice of Appeal in the Bankruptcy Court and identified the Rule 9023 decision and the Rule 9019 Order as the "subjects of appeal." [AP ECF Doc. No. 61] (the "**Appeal**").

The Landlord filed the Motion on October 15, 2015.  By order dated November 12, 2015 [ECF S.D.N.Y. No. 12], the District Court (Kaplan, J.), on consent of the parties, stayed the Appeal pending this Court's determination of the Motion.  On November 24, 2015, the Court conducted a hearing on the Motion (the "**Rule 9024 Hearing**").[15]

## The Rule 9024 Motion

On three occasions, the Landlord has sought discovery from the Trustee regarding the payment of license fees to Management, Holdings and Mr. Payard.  In 2012, in connection with the Payard Settlement, the Landlord and Trustee engaged in informal discovery pursuant to which the Landlord requested documents and information regarding license fees paid under the License Agreement to Mr. Payard and any related entities during the period 2006 – 2012, and specifically with respect to license fees paid by Brazilian licensees.  *See* Graubard Certif. Ex.

---

[15] References to "Nov. 24, 2015 Tr. _:_" refer to the transcript of the record of the Rule 9024 Hearing.

B.[16]  In January 2014 and December 2014, the Landlord sought discovery from the Trustee in connection with the Rule 9019 Motion and Rule 9023 Motion, respectively.  Both times, the Landlord requested documents and information relating to the payment of license fees to Management and/or Holdings. [17]

As part of his response to the Landlord's discovery requests for the Rule 9023 Motion, the Trustee produced the following documents that he had failed to produce in response to the two earlier requests:

> (a) A letter dated August 10, 2011 from Francois Payard to the Trustee concerning a license agreement and payment of license fees in the sum of $150,000 in 2007 ( the "**August 2011 Payard Letter**");

---

[16] By agreement among the parties, the Landlord sent unsigned Interrogatories and Document Requests to the Trustee which the Trustee treated as a request for informal discovery.   Without limitation, Interrogatory No. 1 asked the Trustee to "[s]tate the amount and date of payment of all license fees received by any Payard Entity for the years 2006, 2007, 2008, 2009, 2010, 2011 and 2012."  Interrogatory No. 5 asked the Trustee to "[s]et forth a list list [sic] of each payment made by a Brazilian [sublicensee] to each of the Payard Entities for the period 2006, 2007, 2008, 2009, 2010, 2011 and 2012."

[17] In connection with the Rule 9019 Motion, *see* Graubard Certif. Ex. G, the Landlord served a *Request of 1032-1034 Lex. Ave., Ltd. to Trustee for Interrogatories and Document Production* dated January 16, 2014 (the "**Interrogatories**" and "**Document Request**", respectively).  Interrogatory No. 6 requested the Trustee to "[s]et forth the substance of the 'detailed information' provided to the Trustee as set forth in paragraph 9 of the [Rule 9019] Motion."  Document Request No. 1 requested the Trustee to produce "[c]opies of all documents provided to the Trustee as set forth in paragraph 9 of the [Rule 9019] Motion."  Paragraph 9 of the Rule 9019 Motion states, as follows:

> The Trustee and the Defendants have exchanged documents and detailed information concerning the claims and defenses, have engaged in active settlement negotiation, and have ultimately concluded that a settlement along the lines detailed in the Stipulation is in the parties' respective best interests.

In connection with the Rule 9023 Motion, the Landlord served a *Notice to Take Deposition of Trustee Yann Geron and for Production of Documents* dated December 4, 2014. The Trustee objected to the deposition notice and the document request.  The Landlord and the Trustee resolved the discovery dispute and the Trustee agreed to answer questions and produce documents on an informal basis. The informal discovery requested by the Landlord was set forth in an e-mail by counsel for the Landlord addressed to the Trustee with a copy to his counsel, dated February 18, 2015, with a list of questions attached to the e-mail.  Those questions included "[h]ave you received any documents, spreadsheets, accounting reports regarding the amounts of any licensing fees?"  To the extent that the Trustee received documents, the Landlord asked the Trustee to produce copies of the documents.  *See* Motion, Exhibit K.

(b) A license agreement dated January 5, 2007 between Payard Management LLC and Westin Chosen Seoul ("Westin") (the "**2007 License Agreement**"); and

(c) Pages from the Debtor's general ledger with handwritten notations concerning license fee payments (the "**General Ledger Pages**", and collectively with the August 2011 Payard Letter and the 2007 License Agreement, the "**New Documents**").

Graubard Certif. ¶ 27(a) – (c), Exs. N, O, and P.   Comradery

The Landlord argues that the Trustee's failure to produce the New Documents in response to Rule 9019 discovery requests, coupled with his failure to acknowledge Management's receipt of license fees in response to questions posed by the Court during the Renewed Rule 9019 Hearing, provide grounds under Rules 60(b)(2), (3) and (6) to vacate the Rule 9019 Order.[18]

The Trustee and Defendants oppose the Motion.  They contend that it is time barred by Bankruptcy Rule 8002(b)(1)(D) because it was not filed within 14 days of the entry of the 9019 Order.  They also argue that the Motion is meritless because the New Documents are not relevant to the license-related issues underlying Count Eight, and because the Trustee did not engage in any fraud, misrepresentation or misconduct in connection with the Rule 9019 Motion.  The Court considers those matters below.

### Discussion

Determining whether to grant a motion for relief from an order or judgment under Rule 60(b) is within the discretion the court. *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986). "Properly applied Rule 60(b) strikes a balance between serving the ends of justice and preserving

---

[18] The Landlord also complains that the Trustee failed to produce the New Documents in connection with its discovery requests relating to the Payard Settlement.  That settlement is final and the Landlord has taken no steps to review it.  Accordingly, the Court will focus its discussions on the Landlord's assertions regarding the Rule 9019 Motion.

the finality of judgments." *Id.* The standard for granting Rule 60(b) motions is "strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked-matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Schlafman v. State Univ. of New York, Farmingdale*, 541 F. Appx. 91, 92 (2d Cir. 2013) (summary order) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir.1995)). Because such relief "is circumscribed by public policy favoring finality of judgments and termination of litigation . . . the party seeking relief under Rule 60(b) bears the burden of establishing the grounds for such relief by clear and convincing evidence." *Info–Hold, Inc. v. Sound Merck, Inc.*, 538 F.3d 448, 454 (6th Cir. 2008) (citations omitted). "Motions for relief under Rule 60(b) are disfavored, and are reserved for exceptional cases." *Canale v. Manco Power Sports, LLC*, No. 06 Civ. 6131, 2010 WL 2771871, at *2 (S.D.N.Y. July 13, 2010); *see also Hoffenberg v. United States*, No. 00 Civ. 1686, 2010 WL 1685558, at *4 (S.D.N.Y. Apr. 26, 2010) ("Relief under Rule 60(b) is only warranted if the [party] presents 'highly convincing' evidence that demonstrates 'extraordinary circumstances' justifying relief.") (citation omitted). Pursuant to Rule 60(c)(1), "[a] motion under Rule 60(b) must be made within a reasonable time – and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c).

The Motion does not run afoul of the one year limitation, as the Court entered the Rule 9019 Order on November 5, 2014, and the Landlord filed the Motion on October 14, 2015. In any event, the Trustee and Defendants do not contend that the Motion is time-barred under Rule 60(c).[19]

---

[19] The Trustee raises timing issues in opposing the Landlord's request for relief under Rule 60(b)(6). He argues that the Landlord's nearly six month "delay in filing the [Motion] without explanation undermines a finding by this Court that 'extraordinary circumstances' exist here warranting a reconsideration of the [Rule] 9019 Order." Trustee

The Court first addresses application of Bankruptcy Rule 8002 to the Motion.  Rule 8002(a)(1) states the general rule that "a notice of appeal must be filed with the bankruptcy clerk within 14 days after entry of the judgment, order, or decree being appealed."  FED. R. BANKR. P. 8002(a)(1). An exception to that rule applies to prospective appellants who, prior to filing an appeal of a judgment, seek relief from the judgment by motion under Bankruptcy Rule 9024. FED. R. BANKR. P. 8002 (b)(1)(D).  If that party files such a motion "within 14 days after the judgment is entered," its time to appeal the judgment is extended and runs from the date of the order disposing of that motion.  FED. R. BANKR. P. 8002(b)(1).

"As a general matter, '[t]he filing of a notice of appeal is an event of jurisdictional significance - it confers jurisdiction on the [appellate court] and divests the [trial] court of its control over those aspects of the case involved in the appeal." *United States v. Rodgers*, 101 F.3d 247, 251 (2d Cir. 1996) (quoting *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982)).  "This divestiture rule is founded on 'concerns for efficiency' . . . and the desire to protect 'the integrity of the appellate process.'"  *Cibro Petroleum Products, Inc. v. City of Albany (In re Winimo Realty Corp.)*, 270 B.R. 99, 105 (S.D.N.Y. 2001) (citations omitted).  It applies to appeals filed in bankruptcy cases.  *Id.  See also In re Millennium Global Emerging Credit Master Fund Ltd.*, 471 B.R. 342, 348 (Bankr. S.D.N.Y. 2012) ("[t]he filing of an appeal divests a bankruptcy court of jurisdiction over all aspects of the case that are the subject of the appeal.")  Thus, "a lower court may take no action which interferes with the appeal process or with the jurisdiction of the appellate court."  *Dicola v. American Steamship Owners Mut. Prot.*

---

Obj. ¶ 47.  The Court does not reach that issue because, irrespective of the timing of the Motion, and as set forth below, the Landlord has not established a right to relief under Rule 60(b)(6).

*and Indem. Assoc., Inc. (In re Prudential Lines, Inc.)*, 170 B.R. 222, 243 (S.D.N.Y. 1994)

(citations omitted).

The Trustee and Defendants misplace their reliance on Bankruptcy Rule 8002 because it

does not address the consequences of the filing of an appeal when, as here, the Motion was filed

more than 14 days after the appeal was taken.[20]  Instead, Bankruptcy Rule 8008 is applicable.

That rule "conforms bankruptcy practice to that of [Rule 62.1 of] the Federal Rules of Civil

Procedure and [Rule 12.1 of] the Federal Rules of Appellate Procedure . . . ."  10 COLLIER ON

BANKRUPTCY, ¶ 8008.01, p. 8008-2 (16th ed. 2014) (hereinafter COLLIER).  As relevant, the rule

states:

> If a party files a timely motion in the bankruptcy court for relief that the court
> lacks authority to grant because of an appeal that has been docketed and is
> pending, the bankruptcy court may:
>
>> (1) defer considering the motion;
>>
>> (2) deny the motion; or
>>
>> (3) state that the court would grant the motion if the court where the
>> appeal is pending remands for that purpose, or state that the motion raises
>> a substantial issue.

FED. R. BANKR. P. 8008(a).[21]  The rule "provides a procedure for the issuance of an indicative

ruling when a bankruptcy court determines that, because of a pending appeal, the court lacks

jurisdiction to grant a request for relief that the court concludes is meritorious or raises a

substantial issue."  FED. R. BANKR. P. 8008 Advisory Committee Note to 2014 Amendment.  It

applies "when a post judgment motion -- such as a motion for relief from judgment under Civil

---

[20] The Landlord timely filed its Appeal on June 12, 2015.  The Landlord filed its Motion approximately four months after it commenced the Appeal.

[21] "If the bankruptcy court states that it would grant the motion or that the motion raises a substantial issue, the district court . . . may remand for further proceedings . . . ."  Fed. R. Bankr. P. 8008(c).

Rule 60(b) made more than 14 day after entry of the judgment which does not suspend the time

for filing a notice of appeal is made in the bankruptcy court at a time when a pending appeal has

deprived the bankruptcy court of jurisdiction to decide the motion." COLLIER, ¶ 8008.01, p.

8008-2.

Rule 8008, as amended, became effective December 1, 2014.  *See* U.S. Supreme Court

Order Amending Federal Rules of Civil Procedure (Apr. 25, 2014).[22]  It applies to cases pending

as of the effective date, like this one, "insofar as just and equitable."  *Id.*  The Court finds that it

is just and equitable to apply the rule in this case.[23]  In doing so, the Court will not defer from

considering the Motion.  As explained below, the Landlord has not demonstrated a right to relief

under Rule 60(b)(2), (3) or (6).  Accordingly, pursuant to Rule 8008(a)(2), the Court will deny

the Motion.  The Court now reviews application of Rules 60(b)(2), (3) and (6) in this case.

### Rule 60(b)(2)

Rule 60(b)(2) provides for relief from a final order based upon "newly discovered

evidence that, with reasonable diligence, could not have been discovered in time to move for a

new trial under Rule 59(b)."  FED. R. CIV. P. 60(b)(2).  A party seeking such relief must

demonstrate that:

(1) the newly discovered evidence is of facts existing at the time of decision;

---

[22] http://www.supremecourt.gov/orders/courtorders/frbk14_d28l.pdf.

[23] Courts generally take the position "that it is 'just and practicable' to apply the new rules in all cases as soon as they are promulgated."  *See e.g.*, *Matthew Enterprise, Inc. v Chrysler Group LLC*, Case No. 13-cv-04236, 2015 WL 8482256, at *1 n. 7 (N.D.Cal. Dec. 10, 2015) (applying amended Rule 26(b)(1) standard concerning proportionality of discovery to needs of the case) (citations omitted).  Courts utilize the "maximum extent possible" standard when deciding whether to apply amended rules to proceedings commenced prior to the effective date of such amendments. *See Hodges-Williams v. Barnhart*, 221 F.R.D. 595, 600 (N.D. Ill. 2004). That standard is satisfied whenever the application of an amended rule to a previously pending case is "possible so long as there is no injustice."  *Id.* at 601. Here, the clear purpose of the amendment is to conform the Federal Rules of Bankruptcy Procedure to the Federal Rule of Civil Procedure 62.1 and Federal Rule of Appellate Procedure 12.1, thereby eliminating a gap in the Court's procedural arsenal when confronted with Rule 60(b) motions filed after a challenged order has been appealed. Neither the Trustee nor the Defendants have argued that the Court lacks jurisdiction to decide the Motion.  None of the parties here would suffer injustice through our application of Rule 8008 in this instance.

(2) the moving party is excusably ignorant of the facts despite using due diligence to learn about them;

(3) the newly discovered evidence is admissible and so important as to probably effect change in the result of the former ruling; and

(4) the newly discovered evidence is not merely cumulative or impeaching of evidence already offered.

*See United States v. Int'l. Bhd. of Teamsters*, 247 F.3d 370, 392 (2d Cir. 2001); *Mancuso v.*

*Consol. Edison Co. of New York, Inc*., 905. F.Supp. 1251, 1264 (S.D.N.Y 1995).

The Trustee and the Defendants do not dispute that the New Documents existed at the time of the Renewed Rule 9019 Hearing, or that the Landlord was excusably ignorant of their existence.[24]  Furthermore, they do not contend that those documents are inadmissible or merely cumulative of evidence already offered in connection with the Rule 9019 Motion.  However, they deny that the Landlord is entitled to relief under Rule 60(b)(2).  They contend that the documents are not relevant to the matters at issue in Count Eight, and, as such, the Landlord's use of those documents at the Renewed Rule 9019 Hearing would not have altered the Court's disposition of the Rule 9019 Motion.  Trustee Obj. ¶ 34.  *See also* Defendants' Obj. ¶ 15.  The Landlord disputes that assertion, contending that the New Documents prove that Westin was paying $150,000/year in license fees to Management and that, as such, Count Eight had greater value to the estate than the Trustee represented at the Rule 9019 Hearing.  *See* Graubard Certif. ¶¶ 38-39; *see also* Landlord Certif. ¶ 8 (The New Documents show "the License fees, monies

---

[24] The Trustee concedes that he has been in possession of the New Documents since at least November 2011.  Nov. 24, 2015 Tr. 20:18-22.  At the Rule 9024 Hearing, he explained that his counsel inadvertently failed to produce them in response to the Landlord's Rule 9019 document request, that he did not learn of that mistake until the Landlord sought discovery in connection with the 9023 Motion, and that he rectified his counsel's error by producing the New Documents in response to that discovery.  *Id.* at 53:6-25.  The Landlord did not challenge those assertions and the Court credits them.

coming in, and monies going out.")  The Landlord maintains that had the Court been aware of that value, it would not have approved the settlement.  Motion ¶ 55.

To establish a right to relief under Count Eight, the Trustee must prove either that Holdings was paid license fees by Management and/or the sub licensees, or that he could pierce Management's corporate veil and recover from Holdings, as a 50% owner of Management, license fee payments paid to Management.  The New Documents do not substantiate, let alone support, the allegations underlying Count Eight because they do not reflect the payment of license fees from any source to Holdings and provide no support for the Trustee's veil piercing claims.  Rather, those documents only show that: (i) Management was party to a license agreement with Westin (*see* 2007 License Agreement); (ii) in January 2007, Westin made a $150,000 payment to the Debtor (*see* August 2011 Payard Letter); (iii) the payment represented a fee owed by Westin to Management under the 2007 License Agreement (*id.*); and (iv) in December 2007, the Debtor transferred $150,000 to Management (s*ee* General Ledger).  Nonetheless, at argument the Landlord contended that if those facts had been called to Judge Grossman's attention, the Court would have taken them into account in determining whether the $105,000 cash payment called for under the settlement was adequate (Nov. 24 Tr. 43:15-19) and since they show that $150,000 was paid to Management under the 2007 License Agreement, the Court would have questioned the adequacy of the cash payment.  (*Id*. at 39:3-6; 46:20-23).  The Landlord also argued that had it been aware of the New Documents prior to the Renewed Rule 9019 Hearing, it could have conducted discovery  by subpoenaing the law firm that prepared the 2007 License Agreement (*id*. at 64:2-7).

Neither assertion provides grounds for granting the Motion.  The Landlord has taken no discovery of HCG or Holdings on matters relating to the Rule 9019 Settlement, or otherwise.

17

The Court finds no merit to the Landlord's suggestion that until it had evidence of a single $150,000 license fee payment by Westin in 2007, it could not have formulated a reason to seek discovery from Holdings regarding Holdings' receipt of license fee payments from Management. The Landlord was put on notice of the Trustee's allegations against Holdings in Count Eight in September 2011, when the Trustee sued Holdings. Moreover, the Landlord admits that it was provided information in September 2012 from Management's counsel concerning license fee payments totaling approximately $59,000 received by Management from licenses for Japan and Korea in 2008 and 2009. Graubard Certif. ¶¶ 8, 22, 33(d) and Ex. E. With the Complaint in this proceeding pending at that time, the Landlord had the opportunity to seek discovery from Holdings on those allegations in connection with the Settlement Offer but did not do so and limited discovery requests solely to the Trustee. Rule 9024 is not a vehicle for the Landlord to obtain discovery that it could have obtained years ago. Moreover, there is no reason to think that discovery would have revealed that Holdings received license fee payments from Management or otherwise. In a letter dated April 15, 2015, Debtor's counsel advised the Landlord that the "$150,000 that was paid to [Debtor by Westin] in or about January 2007 was paid to [Debtor] by mistake, [Debtor] remitted same to [Management], which was the sub-licensor of Westin Chosun. The $150,000 was never distributed to [Holdings] and was used as working capital." *See* Trustee Obj., Ex. 2 [AP ECF Doc. No. 69-2]. Moreover, pursuant to the Payard Settlement, the Court authorized the Trustee to transfer the Marks to Mr. Payard. *See supra* note 10.

Based upon our review of the record of the Renewed Rule 9019 Hearing, we do not believe that Judge Grossman would have found the New Documents probative of matters relevant to that hearing. First, as previously noted, those documents do not demonstrate either that Holdings was paid any license fee fees or that there is a basis for piercing Management's

18

corporate veil to make Holdings accountable for license fees paid to Management. The

documents show that Management was paid $150,000 under the License Agreement, but the

Trustee settled the estate's claims against Management in the Payard Settlement. The New

Documents do not contain information that is directly relevant to this action; it is unlikely that

Judge Grossman would have attached much, if any, significance to them had the Landlord

offered them in opposition to the Rule 9019 Motion. Moreover, although, in its objection, the

Landlord claimed that the Settlement Offer did not adequately account for "the license fees that

were generated and never paid to the Debtor that have been alleged in the complaint as the eighth

cause of action," (Landlord's Settlement Obj. ¶ 19), and that "it verily believe[d] that the license

fees received over the years should be in the several hundred thousands of dollars," *id*, the

Landlord offered no evidence in support of that contention either in its objection or at the

Renewed Rule 9019 Hearing.[25]    Rather, the crux of the Landlord's objection to the Settlement

Offer was that the Trustee erred in rejecting Landlord's Revised Amended Offer in favor of that

offer, not that the Trustee had not properly evaluated the strength of the estate's claims against

Holdings. *Id.* at ¶ 16 (After recounting events leading up to Landlord's submitting its Amended

Revised Offer (*id.* at ¶¶ 5-15), Landlord asserted that it was "left with no alternative but to

present the Amended Revised Offer directly to the Court for its consideration as a higher and

better offer than the Settlement Offer."); *Id.* at ¶ 18 ("The Landlord objects to the Settlement

Offer because in comparison to the Amended Revised Offer, there is less money ($25,000) going

to creditors."). The New Documents have no bearing on the adequacy of the Revised Amended

Offer. For these additional reasons, the Court rejects the Landlord's contention that access to the

---

[25] It was not until Landlord sought reconsideration of the 9019 Approval Order under Rule 9023 that the Trustee allegedly presented documents relevant to the issue of the value of the payments under the License Agreement. *See Reply of the Debtor's Landlord 1032-1034 Lex. Ave., Ltd. in Support of Motion under F.R.B.P. 9023* [AP ECF Doc. No. 53] ¶ 4 and Exs. L and M.

New Documents could have altered the outcome of the Rule 9019 Motion.  Accordingly, the

Landlord has not established a basis relief under Rule 60(b)(2).  *See, e.g.*, *Atkinson v. Prudential*

*Property Co.*, *Inc.*, 43 F.3d 367, 371-72 (8th Cir. 1994) (finding district court did not abuse its

discretion in denying Rule 60(b)(2) motion and holding that it was unlikely that newly

discovered letter would change lower court's determination that no written agreement existed

between parties meeting statutory requirements for broker agreements because such letter also

did not meet such statutory requirements); *British Caledonian Airways Ltd. v. First State Bank of*

*Bedford, Texas*, 819 F.2d 593, 601-02 (5th Cir. 1987) (affirming district court denial of Rule

60(b) motion on ground that allegedly newly discovered evidence of collection letter did not

justify granting motion because at most it showed negligence on defendant's part, not the actual

knowledge that the plaintiff needed to prove its case, and movant delayed in seeking discovery),

*reh'g denied*; *Harris Trust and Savings Bank v. Edelson (In re Wildman)*, 859 F.2d 553, 558 (7th

Cir. 1988) (denying Rule 60(b)(2) on basis that allegedly "newly discovered evidence" of

partnership bankruptcy petition and references in a trustee fee petition may have established

existence of partnership but not whether partnership owned interests in land trust where

ownership was primary dispute).[26]

---

[26]  *Jones v. Aero/Chem Corp.*, 921 F.2d 875 (9th Cir. 1989), cited by the Landlord in support of its claim for relief under Rule 60(b)(3), is instructive because it also addressed Rule 60(b)(2).  There, Jones, a customs agent, suffered a chemical burn when a tear gas canister that she was required to wear in a holster on her duty belt accidentally discharged.  She brought a products liability action against the manufacturers of the canister (collectively, "**Athea**") alleging, among other things, defects in the design and manufacture of the canister.  *Id.* at 877.  After a trial in which the jury returned a special verdict of finding "no defect" in the canister, counsel to a third party defendant in the action gave plaintiff's counsel copies of correspondence from Athea to that third party defendant, including a note written by an engineer and Vice President of Athea ("**Smith**"), in which (i) he indicated that he believed that the actuator system that controlled the discharge of the tear gas was "too sensitive," (ii) stated that he knew of the possibility of accidental discharge, and (iii) discussed remedial measures.  *Id.*  The following day, Jones moved for a new trial under Fed. R. Civ. P. 59, asserting, among other things, newly discovered evidence and prejudicial misconduct in failing to produce the Smith correspondence in discovery.  *Id.*  The Court noted that the standards applicable to Rule 60(b)(2) applied to motions for a new trial under Rule 59 when the movant contends that a party improperly withheld evidence.  Thus, in assessing whether Jones was entitled to a new trial based upon the

**Rule 60(b)(3)**

Rule 60(b)(3) provides that a court may grant a party relief from a final order on the basis

of "fraud . . . misrepresentation, or other misconduct of an adverse party." FED. R. CIV. P.

60(b)(3).   A Rule 60(b)(3) motion is not a vehicle for relitigating the merits of the challenged

motion. *Fleming v. New York Univ.*, 865 F.2d 478, 484 (2d Cir. 1989) (citations omitted).

During the Rule 9019 Hearing, the Court and the Trustee engaged in the following colloquy with

regard to Count Eight:

> **THE COURT**: Hold it. Why do you think the eighth cause of action as he uses
> does not have the value he ascribes to it?
>
> **MR. GERON**: My information is that those payments were not made. I can
> confirm it with counsel as well. Those payments were not made. And I want to
> just remind the parties that Mr. Graubard has not presented any evidence, has not
> investigated any evidence. The only allegations he's making are allegations that I
> provided to him, information that I provided to his counsel, to him in connection
> with trying to understand what the claims were.

Nov. 4, 2014 Tr. 14:13-24.  The Landlord contends that "[t]he specific statement by the Trustee

on the record that he knows that no license fees were paid was clearly a material

misrepresentation with regard to the payment of license fees."  Graubard Certif. ¶ 41.  According

---

discovery of the Smith correspondence, the court found that to prevail on her claim, Jones had to show, among other
things, that the content of that correspondence was of such magnitude that production of it earlier would have been
likely to change the disposition of the case. *Id.* (quotation omitted) (citation omitted).   In considering that factor,
the Court rejected the district court's finding that the Smith correspondence merely corroborated plaintiff's expert
testimony, finding that "the admission by the company engineer that the valve was 'too sensitive' is substantively
different than the testimony to that effect by the plaintiff's own hired expert."  *Id.*  Nonetheless, it rejected Jones'
claim for a new trial, finding that the correspondence was not equivalent to a "smoking gun" and that its production
at trial would not have dictated a different result. *Id.*  It found that although production of the correspondence would
likely have impacted on the way Jones prepared for trial, it "was not persuaded . . . that the district court abused its
discretion in concluding Jones failed to establish the outcome likely would have been different." *Id.*  That was so,
even though the newly discovered evidence, which amounted to an admission that the canister had a design defect,
went to the heart of the products liability claim. *Id.*  Here, the New Documents, like the Smith correspondence, were
not equivalent to "smoking guns" since they did not shed light on, let alone evidence, the payment of license fees to
Holdings or provide any support for piercing Management's corporate veil.   Moreover, those documents have less
probative value to the matters at issue in this action, than the Smith correspondence did regarding the products
liability claims in *Jones*.   Accordingly, based on the foregoing, the Court finds that the Landlord has not established
a basis for relief under Rule 60(b)(2).

to the Landlord, the New Documents establish that the statement was misleading. The Landlord

further contends that the "Trustee's words were not ambiguous and could not have been more

succinct than the language actually used, i.e., he affirmatively represented that no license

payments had been made in connection with the Debtor. The Court relied on the Trustee's

statement on the record." Graubard Certif. ¶ 41(a) (emphasis omitted).

The Landlord asserts that the statement that there were no payments made under the

License Agreement actually: (i) refers "to those license fee payments made from those entities in

Las Vegas, Korea, Japan and Brazil that Payard acknowledged were in existence in his letter

dated August 10, 2011 addressed to the Trustee ('August 10th Letter') and in the First Amended

Employment Agreement between the Debtor and Payard . . . in which Payard acknowledged the

existence of 'Brazilian licensee Payard Mercosul Ltda.'"; (ii) confirms that "the payment of

$150,000 that went to the Debtor and was then transferred to Management was a fortuitous error

by the licensee therein Westin Chosun Seoul . . . which highlighted the very existence of those

license fees which underlie the unjust enrichment causes of action alleged as Count Eight"; (iii)

establishes that "even if Westin had sent $150,000 directly to Management, that is exactly the

type of license fee covered by the Count Eight, and which the Trustee claims was not made"; (iv)

meant that "[I]t is the very payment of all license fees by the licensees there under to

Management pursuant to the License Agreement for which the debtor received no compensation,

that is the basis for [Count Eight]" and (v) "is a representation that no payments were ever made

by any licensee to Management under the License Agreement [which . . .] is incredible."

Graubard Reply Certif. ¶¶ 5-7. It further contends that the Trustee's alleged misstatement is

especially significant because (x) the Rule 9019 Motion did not address Count Eight and is

completely silent with regard to the payment of license fees; (y) the Defendants never answered

the complaint; and (z) the Trustee conducted no formal discovery of the Defendants.  Graubard

Certif. ¶¶ 30-31.  Finally it contends that the Trustee's failure to produce the New Documents in

connection with the Rule 9019 Motion coupled with the alleged misstatement constitutes both

"misconduct"  and "fraud" that is actionable under Rule 60(b)(3).  *Id.* at ¶¶ 35, 42, 45.

        The Trustee disputes the Landlord's contentions and maintains that his statements on the

record were accurate then and are still accurate today.  Trustee Obj. ¶¶ 39, 43.  He maintains that

the $150,000 payment reflected in the New Documents "has no relation whatsoever to

Defendants. . . ." and "was never distributed to . . . Holdings. . . ."  *Id.* at ¶ 34.  Further, he

contends that "[t]he Landlord's claim that the Trustee made a material misrepresentation to this

Court clearly lacks merit and is nothing more than an attempt to misconstrue the Trustee's

statements on the record."  *Id.* at ¶ 39.  "The Trustee's comments were clearly referring to

Defendants, as they were made at the hearing on the [Rule] 9019 Motion.  The Landlord's efforts

to muddy the record fall far short of the 'clear and convincing' evidence necessary to show that

the Trustee misrepresented any matters to this Court."  *Id.* at ¶ 40.  Directly responding to the

fraud allegation, the Trustee emphasizes that the "Trustee's statements at the 9019 hearing

regarding the fact that no license fees had been paid were accurate and referring to Defendants in

the instant adversary proceedings.  The mere fact that the Landlord failed to understand the

Trustee's statement does not constitute fraud or misrepresentation on the part of the Trustee."  *Id.*

at ¶ 43.  The Court finds no merit to the Landlord's contentions.[27]

---

[27] The Court notes that the statements in the Graubard Reply Certification concerning Holdings' receipt of money
from license fees, including "[Count Eight] relates to all the license fees that were received by Management, and
*then passed through to its two members, defendant FP and Francoise Payard*" (Graubard Reply Certif. ¶ 4,
emphasis added); and "significant license fees that were paid to Management, and *then siphoned off to FP and
Payard . . . .*" (*Id*. at ¶ 22, emphasis added); are conclusory with no support in the record anywhere, including in
the New Documents.

To establish a right to relief under Rule 60(b)(3), the Landlord "must demonstrate by clear and convincing evidence that the [Trustee] engaged in fraud, misrepresentation or other misconduct" and establish that the "misconduct prevented [it] from fully and fairly presenting [its] case." *Catskill Dev., L.L.C. v. Park Place Entm't Corp*., 286 F.Supp.2d 309, 312 (S.D.N.Y. 2003) (citations omitted) (internal quotations omitted).  In asserting that the Trustee mispresented facts to the Court, the Landlord is not being faithful to what was actually stated at the hearing.  The Court posed the question at issue in response to Landlord's counsel's assertion that the "eighth cause of action has a very, very large potential recovery and it was not even addressed in the underlying papers to this Court.  They only addressed it for seven causes of action."  Nov. 4, 2014 Tr. 14:8-11.  Thus, in responding to the Court's question, the Trustee was not speaking to whether any license fee payments were made to the Debtor, he was speaking to whether any license fees had been paid to Holdings, the defendant in Count Eight. Moreover, contrary to the Landlord's assertion and as previously noted, the New Documents do not substantiate, or even support, the contention that Holdings received license fee payments from Management or otherwise.  Nothing in the New Documents supports a finding that Holdings received any license fee payments.  The fact that the Debtor received one payment from a sub-licensee almost seven years prior to the Renewed Rule 9019 Hearing and thereafter transferred it to Management would not have impacted the Court's assessment of the merits of that settlement. The Landlord has simply not brought forward any clear and convincing evidence, let alone any evidence, that the Trustee misstated facts regarding the license fees to the Court.[28]

---

[28]  The Trustee acted *pro se* at the hearing on this Motion and throughout was visibly upset by the Landlord's insistence in its papers and on the record that he had engaged in "fraud, misrepresentation or other misconduct" in connection with the Renewed Rule 9019 Hearing.  During the hearing the Trustee addressed the substance of his comments to Judge Grossman that underlie the Landlord's request for relief under Rule 60(b)(3).  He explained that in responding to Judge Grossman as he did, he understood the Judge to be asking whether there had been license fees paid to the Debtor.  *See* Nov. 24 Tr. 56-57:2.   In a letter submitted to the Court after that hearing [AP ECF

As used in Rule 60(b)(3), the term "fraud" means a "knowing misrepresentation of a material fact, or concealment of the same when there is a duty to disclose, done to induce another to act to his or her detriment." *Info-Hold, Inc. v. Sound Merch. Inc*., 538 F.3d at 456 (citations omitted). Such fraud may include "deliberate omissions when a response is required by law or when the non-moving party has volunteered information that would be misleading without the omitted material." *Id.* (citations omitted). As the Court has found that (i) the Trustee did not misrepresent facts to the Court, and (ii) Geron did not deliberately withhold the New Documents from the Landlord, the Landlord cannot establish "fraud" for purposes of Rule 60(b)(3).

Nor does the Court find merit to the Landlord's assertion that the Trustee's failure to produce the New Documents in response to Landlord's discovery requests is grounds for relief under Rule 60(b)(3) based on "misconduct". Graubard Certif. ¶¶ 42-44. Although the Court is satisfied that the Trustee did not intentionally fail to produce the New Documents in response to those requests – and notes that he produced them in connection with the Rule 9023 Hearing – it is settled that "even an accidental failure to disclose or produce materials requested in discovery can constitute 'misconduct' within the purview of Rule 60(b)(3)." *Catskill Development*, 286 F.Supp.2d at 314 (collecting cases). *See also Anderson v. Cryovac, Inc*., 862 F.2d 910, 923 (1st Cir. 1988) ("'Misconduct' does not demand proof of nefarious intent or purpose as a prerequisite to redress. . . . [D]epending upon the circumstances, relief on the ground of misconduct may be justified 'whether there was evil, innocent or careless, purpose.'"). *See, e.g., Schultz v. Butcher*,

---

Doc. No. 81] (the "**Trustee Nov. 24 Letter**"), among other things, the Trustee purported to "clarify" that explanation. He advised the Court that "[a]s [his] opposition to the landlord's 9024 motion states, [his] understanding at the hearing was that he was being asked about license payments to [HCG] or [Holdings], the defendants in this adversary proceeding." *See* Trustee Nov. 24 Letter 2. In its own letter [AP ECF Doc. No. 80], the Landlord objects to the submission of the Trustee's letter and asks the Court to disregard it. On the issue of whether the Trustee misrepresented facts to Judge Grossman during the Renewed Rule 9019 Hearing, the Court will limit its review to the record made at that hearing.

24 F.3d 626, 630-31 (4th Cir. 1994) (stating that "although [plaintiff] claims the report was not

withheld intentionally, the document was in her attorney's possession at the time of the request,

and the failure to produce such an important report which contained information helpful to an

adversary's position is not easily excused", and finding misconduct under the purview of Rule

60(b)(3) where plaintiff inadvertently failed to produce documents in discovery); *Catskill*

*Development*, 286 F.Supp.2d at 315 (concluding that defendant's failure to produce tapes was

"product of mistake [on defendant's counsel's] part", that nonetheless "constituted 'other

misconduct' pursuant to Rule 60(b)(3).") (footnote omitted).

Assuming, *arguendo*, that the Trustee's failure to produce the New Documents in

response to the Landlord's discovery requests in connection with the Rule 9019 Motion

constitutes "misconduct" under Rule 60(b)(3), to obtain relief the Landlord must also show that

the "misconduct substantially interfered with [its] ability to prepare [its opposition to the Rule

9019 Motion] and defend against the motion fully and fairly." *Monaghan v. SZS 33 Assoc., L.P.*,

No. 89 Civ. 4900, 1992 WL 135821, at *3 (S.D.N.Y. June 1, 1992). The Landlord has failed to

make that showing since, as discussed above, the Trustee's inadvertent failure to produce the

New Documents did not undermine, in any way, the Landlord's ability to prepare for and oppose

the Rule 9019 Motion. As such, the Landlord has not established grounds for relief under Rule

60(b)(3). *See Greiner v. City of Champlin*, 152 F.3d 787, 789 (8th Cir. 1998) (finding that

opposing party's withholding of psychological report did not constitute such fraud as to justify

relief from the judgment, since withheld report was not admissible under Fed R. Evid. 404, not

relevant, was cumulative, and would not have helped moving party if it had been available at the

time of trial); *Mauldlin v. Edwards (In re M/V Peacock)*, 809 F.2d 1403, 1405 (9th Cir. 1987)

(determining that shipowners' failure to disclose that their ship was not registered in accordance

with particular federal statute did not support relief because moving party had incentive to

investigate the issue and means to do so that were not affected by the opponent's failure to make

voluntary discovery because information was not exclusively within the control of opponent.).[29]

---

[29]  The Landlord misplaces its reliance on *Abrahamsen v. Trans-State Express*, 92 F.2d 424 (6th Cir. 1996); and *Ebersole v. Kline-Perry*, 292 F.R.D. 316, 322 (E.D. Va. 2013), as support for its assertion that the Trustee's failure to produce the New Documents constitutes "misconduct" actionable under Rule 60(b)(3).  In *Abrahamsen*, plaintiffs brought a wrongful death action against defendants arising out of a traffic accident in which defendant, Donald Reagan (who was operating his employer/co-defendant's truck) hit a car parked along the side of the road, killing Gloria Abrahamsen.  *Id*. at 426.  Defendants denied liability and asserted the affirmative defense of contributory negligence.  *Id*.  At trial, Reagan testified (i) that he had swerved to the right, hitting Ms. Abrahamsen's car because he was attempting to avoid a deer entering the roadway, and (ii) that he had not made any statements to anyone that would contradict his testimony.  *Id.*  Ultimately, defendants were found to be seventy percent liable for the accident and Mr. Abrahamsen was found to be thirty percent liable in contributory negligence.  *Id*.  After the trial, while the finding of contributory negligence was on appeal, defendant's counsel disclosed to plaintiff's counsel that on the night of the accident, Reagan told a tow truck driver that the accident was caused because he had "dozed off."  *Id.*  Counsel to defendants' insurance company had investigated the accident and had taken a statement from the tow truck driver to that effect.  However, defendant's counsel in the wrongful death action, had failed to turn it over to plaintiffs during discovery.  *Id*. at 427.  Plaintiffs immediately moved for relief from the judgment which the District Court granted based on Rule 60(b)(2) and Rule 60(b)(3).  *Id.*  On appeal, the Sixth Circuit affirmed, finding that the plaintiffs had established a right to relief under Rule 60(b)(3).  In doing so, the Court focused on defendants' counsel's failure (i) to turn over the tow truck driver's statement during discovery and (ii) to correct Reagan's testimony at trial.  *Id*. at 429.  It found that it was "clear that counsel's actions constitute, at the very least, misconduct within the scope of Rule 60(b)(3) . . . [and] show contempt for the rules of discovery and violate the trust placed in counsel to obey the fundamental rules of court.  In doing so, counsel prevented the plaintiffs from fully and fairly presenting their case."  *Id.*  The facts of *Abrahamsen* are so different from those underlying this matter that it does not support the Landlord's request for relief.  There, the plaintiff intentionally failed to turnover evidence that was material to plaintiff's case and in doing so, severely undermined the plaintiff's ability to present its case.  Here, the Trustee inadvertently failed to produce documents that are not relevant to Count Eight in the Complaint and the failure to produce them did not prejudice the Landlord's ability to present its objection to the Rule 9019 Motion.

In *Ebersole v. Kline-Perry*, 292 F.R.D. 316**,** the defendant made a number of statements in which she accused plaintiff of animal abuse and violation of laws relating to dog training.  The statements were published in various emails and Facebook postings.  *Id*. at 318.  In his amended complaint, plaintiff alleged libel, business conspiracy in violation of state law and tortious interference with a business expectancy.  *Id*.  During discovery, defendant requested that plaintiff produce, among other things, complete copies of his "training files" and "any other documents pertaining to the services provided."  *Id.* at 319.  Plaintiff did not produce any copies of videos to defendant in response to this, or any other discovery requests, although plaintiff did make defendants aware during discovery of the existence of a number of "positive" videos of dog trainings, videos that were subsequently introduced at trial during rebuttal.  During discovery defendant also served a subpoena on the county sheriff's office requesting copies of all documents, including videos, pertaining to investigations involving or related to reports of animal abuse by the plaintiff.  *Id*.  At that time, the sheriff's office produced a number of documents, but no videos.  *Id.*  At trial, three witnesses for the defendant testified that they had observed plaintiff abusing and mistreating dogs in his care.  Plaintiff testified at trial and on cross-examination, denied that he mistreated any dog, and contended that the witnesses were wrong in the way they described his treatment of the dogs.  *Id*.  Ultimately, the jury returned a verdict against defendant on, among other things, the libel claim and awarded plaintiff damages.  *Id.*  Approximately one month later, defendant's counsel received a number of videos and other materials that had been produced by the sheriff's office in response to discovery requests in another lawsuit.  Three of the videos showed

**Rule 60(b)(6)**

Rule 60(b)(6) permits a court to grant a party relief from a final order for "any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(6).  While the rule "allows courts to vacate judgments whenever necessary to accomplish justice," relief under that rule "should be granted only in extraordinary circumstances."  *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009) (citing *Liljeberg v. Health Serv. Acquisition Corp.*, 486 U.S. 847, 863 (1988)).  *See also DeWeerth v. Baldinger*, 38 F.3d 1266, 1272 (2d Cir. 1994) (confirming that relief under Rule 60(b)(6) is appropriate where "the judgment [at issue] may work an extreme and undue hardship.")  "Rule 60(b)(6) is a broadly drafted 'umbrella provision,' which must be read in conjunction with the other sections of that Rule, and is applicable only where the more specific provisions do not apply."  *PRC Harris, Inc. v. Boeing Co.*, 700 F.2d 894, 898 (2d Cir. 1983).  Thus, relief under Rule 60(b)(6) cannot be predicated "on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5)."  *Williams v. 563-569 Cauldwell Assoc. LLC*, No. 10 Civ. 09, 2013 WL 1344672 at *2 (S.D.N.Y. Mar. 28, 2013) (quoting *Liljeberg*, 486 U.S. at 863).  Such motions must be denied.  *Id.*  Put another way, "if the reasons offered for relief from judgment can be considered

---

plaintiff engaged in behavior that the court found could be fairly characterized as abusive. *Id.* at 320.   Thereafter, defendant moved under Rule 60(b)(2) and (3) to vacate the judgment.  The court found that plaintiff failed to produce, or at the very least, disclose the existence of highly pertinent evidence responsive to defendants' discovery requests – the videos showing plaintiff's abusive behavior.  That misconduct prevented the defendant from fully presenting her case at trial since the videos went directly towards establishing the truth of defendant's assertions about plaintiff's alleged abuse of dogs and thus could have helped defendant bolster her defense.  *Id.* at 322-23. Like *Abrahamsen*, this case is of no precedential value to the Landlord because the misconduct Landlord complains of was unintentional and did not undermine Landlord's ability to prepare for and participate in the hearings on the Rule 9019 Motion.  The Trustee sought to recover license fees from Holdings under the Eighth Count in the Complaint, but the New Documents do not reflect any license fees paid to Holdings.

in one of the more specific clauses of Rule 60(b), such reasons will not justify relief under Rule

60(b)(6)." *United States v. Int'l. Bhd. of Teamsters*, 247 F.3d 370, 391-92 (2d Cir. 2001)

(citations omitted).

The Landlord contends that "rectifying a misrepresentation by [the] Trustee to the Court

would qualify under subsection (6) based on the desire of the Court to maintain the integrity of

the bankruptcy process on a fair and equitable basis to the Trustee, to the bankrupt estate, the

creators and to the Bankruptcy Court itself."  Graubard Certif. ¶ 47.  However, in doing so, it is

merely restating the Landlord's alleged grounds for relief under Rules 60(b)(2) and (3).  That

does not provide grounds for relief under Rule 60(b)(6).  *See, e.g.*, *Teamsters*, 274 F.3d at 391-

92.  The Landlord has not stated a right to relief under Rule 60(b)(6).[30]

---

[30] The Landlord misplaces its reliance on *In re Gledhill*, 76 F.3d 1070 (10th Cir. 1996).  There, the debtors, two individuals, filed a chapter 11 plan that called for the payment of amounts due and owing to a secured creditor (the bank) under a prepetition loan agreement.  The debtors failed to make those payments and, on the bank's motion, the court dismissed their case.  *Id.* at 1073.  Thereafter, the bank obtained a judgment decree and order of foreclosure in state court, and conducted a judicial sale of some of its collateral.  *Id.*  It obtained a deficiency judgment against the debtors and lien securing it and on the eve of another court-ordered sale of the debtors' property, the debtors filed a second chapter 11 case.  *Id.*  The bank obtained stay relief on the grounds that the second case was filed in bad faith and, thereafter, the bank moved forward in state court to foreclose on the debtor's property.  *Id.*  Prior to a scheduled foreclosure sale, the court converted the chapter 11 case to one under chapter 7 and a chapter 7 trustee was appointed.  *Id.*  A week before the scheduled foreclosure sale, the trustee moved the court under Rules 60(b)(2) and (b)(6) for relief from the order modifying the automatic stay and for an order reimposing the stay.  *Id.*  The trustee argued that he was entitled to the requested relief from the stay order because the value of the bank's collateral far exceeded the total amount of secured debt and that the bank should not be permitted to sell its collateral to the detriment of the debtors' unsecured creditors.  *Id.* at 1074.  Ultimately, the court granted the motion finding that the increased value of the collateral constituted a "change in circumstances" supporting relief under Rule 60(b)(6).  *Id.* at 1073, 1081.  The Tenth Circuit affirmed, finding that the exceptional circumstances of "the conversion of the Chapter 11 case to a chapter 7 liquidation case, the increase in property value, and the likelihood that the estate could distribute more money to creditors if the [t]rustee sold the property in the open real estate market."  *Id.* at 1081.  Here, the Landlord asserts that while *Gledhill* did not turn on "newly discovered evidence," it shows that significantly changed circumstances provide a predicate for relief under Rule 60(b)(6).  It argues that in this case, the production of the New Documents − which were not produced in response to the Landlord's prior discovery requests, constitute changed circumstances that support its request for relief under Rule 60(b)(6).  *See* Graubard Certif. ¶ 48.  The Court disagrees.  First, the production of the New Documents is not a predicate for relief under Rule 60(b)(6), because it is specifically covered by Rule 60(b)(2).  *See, e.g.*, *Gledhill*, 76 F.3d at 1081-82 ("Relief under Rule 60(b)(6) may not be premised on one of the specific grounds enumerated in Rule 60(b)(1)-(5).").  Second, even if production of New Documents could be viewed through the lens of Rule 60(b)(6), the Landlord has not demonstrated a "change in circumstances" that could support the requested relief.  Unlike *Gledhill*, where the new appraisal related to the collateral at issue in the foreclosure action, and thus bore directly on the merits of

## Conclusion

For al the foregoing reasons, the Landlord's motion is **DENIED**.

**IT IS SO ORDERED.**

Dated: New York, New York
   April 8, 2016                              /s/ *James L. Garrity, Jr.*
                                          United States Bankruptcy Judge

---

that action, the New Documents do not bear on whether Holdings actually received any licensing fees, which is the matter at issue in Count Eight.